JAMES HODGES, and others, trading as HODGES BRO-
    THERS *vs.* THE NINTH NATIONAL BANK OF NEW
    York, Claimant of property attached as that of
    GEORGE HUGHES, and others, trading as JAMES
    DUNCAN & COMPANY.

*Partnership and parties—Question of Misjoinder—Liability of*
    *all the Partners for the acts and representations of one,*
    *communicated to, and acquiesced in by the others—Whether*
    *certain objects were within the scope of, and connected with*
    *the business of a Partnership, a question for the Jury—*
    *Effect of amending the short note in Attachment.*

H. and S., two of the members of the firm of G. H. & Co. in New
    York, engaged in business in Baltimore, under the name of J. D. &
    Co.; W. and C., were the other members of the firm of G. H. &
    Co. ; W. was sent by the latter firm to Baltimore for the purpose of
    establishing the firm of J. D. & Co., which had failed largely
    indebted to G. H. & Co., and of giving it credit and insuring its
    business success.   The objects of G. H. & Co., in so doing, were to
    recover the loss they had sustained, and make the Baltimore house
    a source of profit to them in the future.   The firm of H. Bros. in
    Baltimore, upon representations made by W., gave credit to the
    house of J. D. & Co., and upon the subsequent failure of that firm,
    seized its effects under an attachment against H. S. W. & C., (being
    all the members of the firm of G. H. & Co.,) trading as J. D. & Co.
    At the trial, it appeared, that W. had authority to establish the
    house of J. D. & Co.; to give it credit, and especially to give it
    credit with the house of H. Bros.   He did so by informing H. Bros.,
    that G. H. & Co., had taken possession of the house of J. D. &
    Co., that it was their concern, and that they intended to conduct
    the business there, under the old name of J. D. & Co., that he
    had brought two smart, active and energetic young men from
    Philadelphia to arrange the business for them, and that they might
    now sell as many goods as they pleased to them, and the house of
    G. H. & Co., would be responsible for them.   Upon these assurances
    alone credit was given, and the account sued on was made.   W. at the

Hodges, *et al. vs.* Ninth Nat'l Bank of New York, &c.

time he made these assurances, was not a member of the house of J. D. & Co., but was a member of that of G. H. & Co., and all the members of the latter, including C., either knew personally, or were informed by H. or W., that credit had been given by their firm to the house of J. D. & Co. W. in his interviews with the firm of H. Bros. never spoke of a " guaranty," but stated that the house of J. D. & Co., was the concern of G. H. & Co., and that they would be responsible for all goods sold to them; and that responsibility was to continue throughout the whole dealings between the parties. HELD:

1st. That it was for the jury to decide whether or not the objects of G. H. & Co., in sending W. to Baltimore, were within the scope of, and connected with the business of their partnership.

2nd. That if the above representations were made by W., and were communicated or known to the other members of the firm of G. H. & Co., and were acquiesced in by them, then that firm was bound by them, and the attachment in the form in which it was brought against the firm of G. H. & Co., could be maintained.

3rd. That said questions should have been left to the jury upon all the evidence.

4th. That the result of an amendment of the short note or *narr.* so as to correct the misjoinder of defendants, if any, and count on a guaranty, would be to quash the attachment.

APPEAL from the Superior Court of Baltimore City.

The case is stated in the opinion of the Court.

*First and Second Exceptions* waived.

*Third Exception.*—The plaintiffs offered the two following prayers:

1. That if the jury believe from the evidence, that the plaintiffs sold to the house of James Duncan & Company, the goods mentioned in the account filed with the attachment papers, at the prices therein set forth, and that said account, or any part thereof, was due on the 19th of February, 1876, when the attachment was issued; and shall further find that the firm of George Hughes & Company,

of New York, was composed of George Hughes, Thomas. A. Smith, John Waddell and John Caldwell, and that the said firm of George Hughes & Company, prior to the sale and delivery of the goods in question, held itself out to the plaintiffs as James Duncan & Company, by declarations of said John Waddell to that effect, made to the plaintiffs in the course of the business of George Hughes & Company, and on their behalf, and within the scope of the partnership of said firm, and stated to the plaintiffs also, through and by said declarations so as aforesaid made, that the concern of James Duncan & Co., was their concern, and that George Hughes and Company owned said concern of James Duncan & Co. ; and shall further find that the plaintiffs, after and on the faith of said statements, gave credit to James Duncan & Company, as composed of the parties above named, and sold to that concern the goods, for the price of which the attachment is issued, on the faith and in the belief that it was composed of said parties, and that the business of Duncan & Co. was their business, and that the statements of said Waddell, as testified to by the witnesses, Lewis and Hodges, were true, the plaintiffs are entitled to a verdict for the whole of their said claim, if the jury shall find it was all due on February 19th, 1876, or for so much thereof as the jury may find to have been due on the 19th of February, 1876, when the attachment was issued ; notwithstanding the jury may find that the firm of James Duncan & Company in fact consisted of only two members of the firm of George Hughes & Company, to wit, George Hughes and Thomas A. Smith ; and should the jury find for the plaintiffs, they may, in their discretion, find interest upon so much of the amount as they shall find to have been due when the attachment was issued.

2. That if the jury believe from the evidence, that the plaintiffs sold to the house of James Duncan and Company, the goods mentioned in the account filed

with the attachment paper, at the prices therein set forth, and that said account, or any part thereof, was due on the 19th of February, 1876, when the attachment was issued; and shall further find that the firm of George Hughes and Company, of New York, was composed of George Hughes, Thomas A. Smith, John Waddell and John Caldwell, and that the said firm of George Hughes and Company, was a large creditor of the house of James Duncan and Company, and had a pecuniary interest in its welfare and success, and was desirous and intended to give credit to said house, and maintain its credit and promote its business prosperity, and that John Waddell, a member of the firm of George Hughes and Company, accordingly came to the City of Baltimore, on behalf of his house, and by its authority, for the purpose of establishing the credit of James Duncan and Company, and enabling it to make credit purchases here, and promoting its business success, and in pursuance of said purpose, and prior to the sale and delivery of the goods in question, called on the plaintiffs, Messrs. Hodges Brothers, and on behalf of George Hughes and Company, and in their name, represented to the witnesses, Messrs. Hodges and Lewis, that the said house of James Duncan and Company belonged to George Hughes and Company, and was their concern, and that they were going to run it under the name of James Duncan and Company, and that the business of James Duncan and Company was George Hughes and Company's business, and that George Hughes and Company would be responsible for every dollar of debt contracted by James Duncan and Company; and shall further find that said representations of Waddell were made in the course of the business of George Hughes and Company, (within the scope of said partnership,) and that the plaintiffs after and on the faith of said statements, gave credit to James Duncan and Company, as composed of the parties above named, and sold to that

concern the goods, for the price of which the attachment is issued, on the faith and in the belief that it was composed of said parties, and that the business of James Duncan and Company was their business, the plaintiffs are entitled to a verdict for the whole of their said claim, if the jury shall find it was all due on February 19th, 1876, or for so much thereof as the jury may find to have been due on the 19th of February, 1876, when the attachment was issued, notwithstanding the jury may find that the firm of James Duncan and Company in fact consisted of only two members of the firm of George Hughes and Company, to wit, George Hughes and Thomas A. Smith, and should the jury find for the plaintiffs, they may, in their discretion, find interest upon so much of the amount as they shall find to have been due when the attachment was issued.

And the claimant offered the following prayer:

That the plaintiffs have offered no evidence to enable them to recover against the defendant Caldwell, as a member of the firm of James Duncan & Co., and are not entitled to recover in this action.

. The claimant also filed the following special exception to the prayers and evidence:

The claimant specially excepts to both of the prayers of the plaintiffs, because there is no evidence in the cause of a holding out of the members ,of the firm of George Hughes & Co., and especially of Caldwell, as members of James Duncan & Co., and no evidence of authority in Waddell, to make the declarations offered in evidence, or that such declarations were in the course of the co-partnership business of George Hughes & Co.

The Court, (DOBBIN, J.,) rejected the plaintiffs' prayers and granted the claimant's prayer. The plaintiffs excepted, and the verdict and judgment having been rendered ·against them, they appealed.

Hodges, *et al. vs.* Ninth Nat'l Bank of New York, &c.

The cause was argued before BARTOL, C. J., GRASON, MILLER, ROBINSON and IRVING, J.

*S. Teackle Wallis, Jr.* and *S. Teackle Wallis,* for the appellants.

The general rule as to the capacity of one partner to bind his associates by his declarations, is believed to be plain, as laid down by the the the Supreme Court, in regard to acts in a case where the doctrine was applied to liability for tort. "Such liability," says Justice Strong, (*Stockwell vs. U. S.,* 13 *Wallace,* 548,) "rests upon the theory that the contract of partnership constitutes all its members agents for each other, and that when a loss must fall upon one of two innocent persons, he must bear it who has been the occasion of the loss or has enabled a third person to cause it. In other words, the tortious act of the agent is the act of his principals, if done in the course of his agency, though not directly authorized." As acts are, under this rule, so are representations and declarations. No direct authority—no authority at all—is necessary to be shown, in order to bind the co-partner, if the act be done by another partner in the course of his partnership agency.

This Court, quoting and approving the language of Judge STORY, has declared the rule to be, even in a case of fraud, that "the representation of any fact, or a misrepresentation of any fact, *made in any partnership transaction,* by one partner, is considered as the representation or misrepresentation of all the partners, and will bind the firm." *Doremus vs. McCormick,* 7 *Gill,* 64; *Story on Part.,* secs. 107–108; *Manning vs. Hays,* 6 *Md.,* 9; *Maltby vs. N. W. Va. R. R.,* 16 *Md.,* 443; *Cadwallader vs. Kroesen,* 22 *Md.,* 205.

Mr. Parsons states the rule still more briefly. "If the partnership exists, the question then is—*does the act refer to the business of the partnership?* If so, it binds the firm." *Parsons on Part.,* 192, 193, 197; and see *Levi on*

*Mercantile Law,* 84 *Law Libr.,* 139, 141, quoted and approved in 16 *Md.,* 443.

The declarations of Waddell, if binding on George Hughes & Co. established the right of the appellants to recover.

Those declarations, if ''made in a partnership transaction,'' or '' in the business of the partnership,'' and acted on in good faith by the appellants, were conclusive on George Hughes & Co., by way of estoppel, whether they were true or false, and whether they were authorized or unauthorized.

The Court below should consequently have left it to the jury, (as prayed by appellants,) to say whether the transaction, in which the declarations were made, was or was not a partnership transaction, or one belonging to the business of the partnership of George Hughes & Co.

This Court has expressly ruled that it is peculiarly the province of a jury to determine that question. *Maltby vs. N. W. Va. R. R.,* 16 *Md.,* 443, and especially in cases like the present, where the circumstances are out of '' the usual routine of partnership transactions.'' *Cadwallader vs. Kroesen,* 22 *Md.;* 205 ; *Bigelow on Estoppel,* 467.

The prayer of the appellee cannot be maintained. It was granted by the learned Judge below, upon the sole ground, as announced in his opinion, that Caldwell could not be bound, unless he, personally, held himself out, or directly and specifically authorized Waddell to hold him out, as a member of the firm of James Duncan & Co., and that there was no proof that he did so. The possibility of a partner's being estopped from denying even the unauthorized representations of his co-partner, when made in the course of a partnership transaction, was excluded from the case, because the Court determined, as matter of law, that the transaction in which the declarations were made by Waddell was not a partnership transaction of George Hughes & Co., and that the declarations did not refer to the business of that firm.

No authority has been found by which this action of the Court below is sustained. It is believed to be in direct antagonism to the decisions of this Court already referred to.

*White vs. Davidson,* 8 *Md.,* 186–7, cited by the appellee, is a case in which the Court took pains (p. 187,) to say, that the question was "not one of the authority of a partner to bind his co-partners, but one of agency." The agency, the Court adds, was "created and defined by a written instrument," which delegated the authority to three agents. The party acting on it had notice of this, but did not examine the paper, and acted on the authority of one whom the Court held to have no power.

*Owens vs. Mackall,* 33 *Md.,* 389, was not a case of estoppel or declarations, or of the capacity of one partner to bind another. It involved simply the question whether Dr. Mackall, by certain acts of his own, had made himself liable as a partner—in other words whether by signing certain contracts, he had bound himself.

In *Fox vs. Clifton,* 19 *E. C. L. R.,* 233, there was no question as to whether a partner was bound by his co-partner's acts or words. The controversy was as to whether certain parties had held themselves out as partners, or permitted themselves to be so held out by the secretary of a company, for whose debts it was sought to involve them. It was, in this connection, very naturally said by Ch. J. TINDAL, that to hold one's self out as a partner imports at least one's voluntary act. But the Court stated it, at the same time, as a recognized principle of the law, not only of England, but of all Europe, that "the members of trading partnerships are constituted agents, the one for the other, for entering into contracts *connected with the business and concerns of the partnership,* so that by the contracts of the agent all his principals are bound," (p. 241.)

*Bonfield vs. Smith,* 12 *M. & W.,* 405, went up mainly on the legality of a question asked of a witness below. The plaintiffs sold to Bush & Co., and sued Richard Smith as

constituting that firm. It was proven that there were other partners, and the Court held that the plaintiffs, having dealt with Bush & Co., were bound to prove that defendant was Bush & Co., or held himself out as such. That was all. There was no question at all relating to that which this case presents.

*Metcalf on Contracts,* 113–114, merely states the ordinary doctrine, as involved in the cases just referred to.

*Moran vs. Prather,* 23 *Wallace,* 497, determines simply that one member of a firm cannot bind another, by executing a bond for the benefit of third persons, without special authority. But the Court below, whose ruling is affirmed by the Supreme Court, accompanies this decision by the qualification, that while " solidarity in obligations is never presumed," commercial partners are liable *in solido* " *in transactions connected with their commercial business.*"

It does not seem material to consider whether the giving of firm guarantees for the debts of others is within the ordinary powers of the several partners. Nor is it more so to enquire whether a partner, unauthorized by his associates, can bind them by a guaranty of the credit of others merely because it might be beneficial to the interests of his firm to do so, as was the case in *Brettil vs. Williams,* 4 *Exchequer,* 628, 631. With authority he can clearly do so. *Brandt on Suretyship, sec.* 10. Beyond all question Waddell was authorized to guaranty the debts of Jas. Duncan & Co., and give credit to that house, for it was the confessed determination and plan of George Hughes & Co. to do this, and they did it universally. They all agreed that it was their interest to do it, and they did it by common and open consent, to promote their interest. There was no lack of accord and authorization on that point. They did it verbally and in writing.

But, quite apart from the questions raised by the appellants' prayers, and their hearing on the appellee's prayer,

as already discussed, the prayer of the appellee was manifestly vicious. It prayed the Court to instruct the jury, broadly, that the appellants were not entitled to recover. And this, without any reference to the pleadings, but simply on the evidence. Now, the appellants had proven, without objection, the giving of the written guaranty by George Hughes & Co., which is to be found on p. 6 of the Record. That this guaranty was given by the consent of all the members of the firm of George Hughes & Co., is not in dispute, on the proof. It was a valid guaranty, under the rulings of this Court, and was before the jury as such. *Hutton vs. Padgett,* 26 *Md.,* 230.

Even if there had been no written guaranty, the verbal guaranty which all the witnesses prove to have been given by Waddell, would have bound George Hughes & Co., it having been given with "the main object and purpose of subserving the interests and ends of the guarantors." *Small vs. Schaeffer,* 24 *Md.,* 161; *Emmerson vs. Slater,* 22 *How.,* 28; *De Colyar on Guaranties,* 139 *note.*

Moreover, if objection had been taken, under the pleadings, to the admissibility of the written guaranty, or to its legal sufficiency under the Statute of Frauds as a specific cause of action, there was evidence before the jury tending to prove a parol promise, made by George Hughes & Company, through Hughes, after the goods had been sold and delivered on the faith and credit of the guaranty to pay for them, which promise, if believed by the jury, entitled the appellants to recover on the common counts. *De Colyar on Guaranties,* 226; *Brandt on Suretyship, sec.* 65; *Lamar vs. Manro,* 10 *G. & J.,* 52; *State vs. Reigart,* 1 *Gill,* 26; *Drury vs. Briscoe,* 42 *Md.,* 163; *Elliott vs. Peterson,* 4 *Md.,* 492; 1 *Parsons on Contracts,* 434.

A motion to amend was made below, the terms of which do not appear by the record. If this case is remanded, the Court is respectfully requested to rule that the appellants are entitled to amend their short note or *narr.* so as,

if need be, to correct the misjoinder of defendants, if any, and count on the guaranty, if they see fit. *Neptune Insurance Co. vs. Montell*, 8 *Gill*, 232; *Morgan vs. Pendergast*, (*unreported case,*) *April T.*, 1869; *Norris vs. Graham*, 33 *Md.*, 59.

*William A. Fisher*, for the appellee.

There is no foundation in the evidence for the theory of the appellants' prayers. They proceed upon the assumption that the members of the firm of George Hughes & Company were held out as constituting Duncan & Company.

The proof is clear that, in fact, Hughes & Smith only constituted the latter firm, and neither Waddell nor Caldwell was connected with it. Caldwell was not in Baltimore, and never saw or communicated with the appellants. The evidence of Caldwell, introduced by the appellants, shows that not only was he no party to his being held out as a partner in Duncan & Company, but he understood that George Hughes & Company were guarantors only of the indebtedness of James Duncan & Company to the appellants. In fact, the letter from George Hughes & Company to the appellants, shows that such was the actual relation between the parties, and the alleged declarations of Waddell, if it were important to do so, could be shown not to be inconsistent with the letter.

The general promises of Hughes, made after the purchase of the goods, and the failure of Hughes & Company and Duncan & Company, have no bearing upon the controversy.

In order to recover against the four parties, and maintain the theory of the appellants' prayers, it is necessary to establish that Caldwell was *"held out"* as a member of Duncan & Company. This "imparts at least the voluntary act of the party so holding himself out." *Metcalf on Contracts*, 113–114; *Fox vs. Clifton*, 6 *Bingham*, (19 *E. C. L. R.*, 794;) *Owens vs. Mackall*, 33 *Md.*, 389.

It is not "in the usual course of business," as asserted by the appellants' prayers, for one partner to bind another for the debts of another firm. He does not even possess authority to bind his partner to a guaranty without his full knowledge.

The burthen of proving the knowledge and authority of Caldwell, even as to a guaranty, would rest upon the appellants. *Metcalfe on Contracts,* 119; *Moran vs. Prather,* 23 *Wallace,* 497; *White vs. Davidson,* 8 *Md.,* 175, 186–7; *Bonfield vs. Smith,* 12 *Mees. & Wels.,* 405.

The guaranty would not be binding, although the guaranteeing firm was interested in building up the credit of the guaranteed party. *Brettel vs. Williams,* 4 *Exch.,* 628–31.

GRASON, J., delivered the opinion of the Court.

It appears from the record that Hodges Brothers issued an attachment against George Hughes, Thomas A. Smith, John Waddell and John Caldwell, partners, trading as James Duncan and Company, and caused the same to be levied upon certain goods in the City of Baltimore. The appellee filed a petition claiming the property, and filed pleas, and also issued an attachment and caused it also to be levied upon the same goods, this second attachment being against George Hughes and Thomas A. Smith, trading as James Duncan and Company. Judgment was rendered in favor of the claimant, and from that judgment this appeal is taken. Three exceptions were taken by the appellants, the two first of which were to the rulings of the Court upon the evidence, and the third to the rejection of their two prayers, and the granting of the prayer of the appellee, by which the jury were instructed that the plaintiffs had offered no evidence to enable them to recover against the defendant, Caldwell, as a member of the firm of James Duncan & Co., and were not entitled to recover in this action.

The proof shows that in the early part of the year 1875, about a year before the final failure of the firm of James Duncan & Co. and the issuing of the attachment in this cause, George Hughes and Thomas A. Smith, both members of the firm of George Hughes & Co., of New York, formed a partnership under the name of James Duncan & Co., and commenced business under that name in Baltimore City.    Hodges Brothers had refused to sell goods to James Duncan & Co., and Waddell, who was a member of the firm of Hughes & Co., of New York, but not of the firm of James Duncan &, Co., arrived in Baltimore for the purpose of starting the business and establishing the credit of James Duncan & Co.

He was a friend of Lewis, a member of the firm of Hodges Brothers, and called upon Hodges Brothers, and had interviews with Lewis, and James Hodges, the senior member of the firm, for the purpose of obtaining credit for James Duncan & Co. with the house of the appellants. He stated that the firm of James Duncan & Co. were in difficulties and that he had come to Baltimore to take possession of their effects.    He represented that George Hughes & Co. were large creditors of James Duncan & Co., and had taken possession of their effects, and were going to run that house themselves under the name of James Duncan & Co.; that it was their concern; that they owned it and that they were going to be responsible for every dollar of its purchases, and that Hodges Brothers might now sell James Duncan & Co. as many goods as they chose.    He further stated that George Hughes & Co. had turned Duncan out of the firm of James Duncan & Co., and that they intended to run the concern profitably.    He introduced to Hodges Brothers two young men, named Denny, whom he stated he had brought from Philadelphia to conduct the business ; that they were active, smart and energetic, and that they would run the concern. From the time of this introduction Hodges Brothers began

to sell them goods and continued to sell for about a year, when the Dennys were turned off and a man named Franklin became the manager. It is clearly proved by Lewis that the appellants sold to James Duncan & Co. exclusively on the representations of Waddell that the concern in Baltimore belonged to, or was the concern of George Hughes & Co., and that the latter firm would be responsible for its debts. James Hodges also proved that he never knew, till about the time his firm was about to issue the attachment in this case, who constituted the firm of George Hughes & Co., and then learning who did constitute said firm, the attachment was issued accordingly; and that he did not know, until after the attachment was issued, that George Hughes and Thomas A. Smith only composed the firm of James Duncan & Co. Thomas A. Smith swears that the appellants were never informed, as far as he knew, that the firm of James Duncan & Co. was composed of only two of the members of the firm of Hughes & Co.

In January, 1876, George Hughes was in Baltimore, and stated to the appellants that they should never lose one dollar of their indebtedness, but that their accounts should be paid in full, and both Smith and Caldwell testify that they were informed of such promise by Hughes & Co., and it does not appear that they made any objection to, or dissented from such promise. It was also found by Smith and Caldwell that James Duncan & Co. were largely indebted to the New York firm, and the latter, in consequence thereof, had an interest in giving them credit and maintaining their credit and promoting their business success. It also appears in proof that when Franklin was put in charge of the Baltimore house as manager, Hodges Brothers addressed a letter to George Hughes stating that the latter had changed the management of the firm house of James Duncan & Co., and asking whether Hughes was still interested in its business

and would be responsible still for its purchases. To this letter Hodges Brothers received a reply, signed George Hughes & Co., saying " we still continue to guarantee the payment of all purchases made by James Duncan & Co. Baltimore. After this letter was received, Hodges Bros. continued to sell to the house of James Duncan & Co. till the time of their failure. George Hughes & Co. also failed and made an assignment for the benefit of their creditors, but the contents of, and the debts due to, said Baltimore house, were not included in the assignment. Caldwell, after having testified to the large indebtedness of Duncan & Co. to George Hughes & Co., and of the interest the latter therefore had in giving credit to them, and maintaining their credit, further stated that such interest induced George Hughes & Co. to assume the entire obligations of James Duncan & Co., and that, when parties called upon them about James Duncan & Co., " we said if they did not pay their bills we would." He further swore that George Hughes & Co. did give credit to James Duncan & Co. with the firm of Hodges Bros., and assumed the payment of any purchases they might make with that firm, guaranteeing the payment of the bills ; and in answer to the fifth interrogatory, he stated that there was an understanding between George Hughes & Co. and Hodges Bros., that George Hughes & Co. should be responsible for all sales made by Hodges Bros. to James Duncan and Company. Smith, also, another member of the firm of George Hughes & Co. swears that " we assured Hodges Bros. that we would be responsible for all purchases which James Duncan & Co. should, from time to time, make from them ;" and he states that this assurance was given at the beginning of the sales, and that it was the understanding that George Hughes & Co. should be responsible for all the purchases during the entire period. But while both Caldwell and Smith thus testify, they in other parts of their testimony speak of the obligation of

George Hughes & Co. as a *guaranty*, and state that what-ever personal assurances were given to Hodges Bros. were given by either Hughes or Waddell.   Caldwell says these assurances were both verbal and in writing, and that his knowledge of them was derived from Hughes and Waddell.   It will appear from the language of the inter-rogatories and cross-interrogatories to Caldwell that the assurances made to Hodges Bros. were assurances of Hughes & Co., and not individual assurances of Hughes and Waddell.   Upon the aforegoing proof the appellants offered two prayers, both based upon the verbal repre-sentations made to the appellants by Waddell.   The first prayer asked an instruction, that, if the jury should find the sales of goods mentioned in the account filed, to have been made by the appellants to Duncan & Co. and that any part of the account was due when the attachment issued; and should also find that Hughes, Smith, Waddell and Caldwell composed the firm of George Hughes & Com-pany, and that said firm, before the sale and delivery of the goods, held itself out to the appellants as James Dun-can & Co. by declarations of Waddell to that effect, made to the appellants in the course of the business of George Hughes & Co., and within the scope of its partnership, and through and by those declarations, stated to the appellants that the concern of James Duncan & Co. was the concern of George Hughes & Co., and that the latter firm owned the same; and if the jury should further find that the appellants, after and on the faith of said statements gave credit to James Duncan & Co., as com-posed of the parties above named, and sold to it on the faith and in the belief that it was composed of the said parties, and that its business was their business, and that Waddell's statements were true, then the appellants were entitled to recover, notwithstanding the jury might be-lieve that the firm of James Duncan & Co. in fact con-sisted of Hughes and Smith only.   The second prayer con-

tained a fuller statement of facts, and required the jury to find, before a recovery could be had by the appellants, instead of the "holding out," as assumed in the first prayer, that George Hughes & Co. were large creditors of James Duncan & Co., and had a pecuniary interest in the welfare and success of that house, and were desirous and intended to give it credit, and to maintain its credit and business prosperity, and that Waddell, a member of the firm of George Hughes & Co., accordingly came to Baltimore on behalf of his firm and by its authority, for the purpose of establishing the credit of James Duncan & Co. and enabling it to make purchases on credit here, and promoting its success, and in pursuance of such purpose and on behalf of George Hughes & Co., and in their name, made the representations as set forth in the evidence of Hodges and Lewis in the course of the business of George Hughes & Co., and within the scope of their partnership.

The evidence in this case shows that Waddell did not "hold out" Caldwell as a member of the firm of James Duncan & Co. Waddell was not a member of that firm himself. The authorities relied upon by the appellee to show that one person cannot be made liable as a member of a partnership by such "holding out" by another, without his authority therefor, are not applicable to this case. Waddell, not a member of the firm of James Duncan & Co., but of the firm of George Hughes & Co., was sent by the latter firm to Baltimore for the purpose of re-establishing the house of James Duncan & Co., which had failed, largely indebted to George Hughes & Co., and of giving it credit and insuring its business success. The objects of George Hughes & Co. in so doing were to recover the loss they had sustained, and make the Baltimore house a source of profit to them in the future. It was for the jury to decide whether or not these objects were within the scope of, and connected with, the business of their partnership. *Maltby vs. N. W. Va. R. R.,* 16 *Md.,* 443; *Cadwallader vs.*

*Riveson,* 22 *Md.,* 205. It does not appear what were the particular instructions given to Waddell to effect these objects, but it clearly appears that he had authority to re-establish the house of James Duncan & Co., to give it credit, and especially to give it credit with the house of the appellants. He did so by informing the appellants that George Hughes & Co. had taken possession of the house of James Duncan & Co.; that it was their concern, and that they intended to conduct business there under the old name of James Duncan & Co.; that he had brought two smart, active and energetic young men from Philadelphia to manage the business for them, and that they might now sell as many goods as they pleased to them, and the house of George Hughes & Co. would be responsible for them. And all these assurances were made by a member of the firm of George Hughes & Co., who, it turns out, was not one of the members of the firm of James Duncan & Co. Upon these assurances alone credit was given and the account sued on in this case was made. There is no doubt left by the proof in the record that all the members of the firm of George Hughes & Co., including Caldwell, either knew personally, or were informed by Hughes or Waddell, that credit had been given by their firm to the house of James Duncan & Co., though in their evidence they sometimes denominate the liability of their firm as a "guaranty," and sometimes as a responsibility. The proof shows beyond question that Waddell, in his interviews with Hodges and Lewis, never spoke of a "guaranty," but stated that the house of James Duncan & Co. was the concern of George Hughes & Co., and that they would be responsible for all goods sold to them; and that responsibility was to continue throughout the whole dealings between the parties. If these representations were made by Waddell, and were communicated or known to the other members of the firm of Hughes & Co., and were acquiesced in by them, of which there is some

evidence in the record, then that firm is bound by them, and this attachment in its present form against the firm of Hughes & Co. can be maintained. *Parsons on Partnership,* 197 ; *Story on Partnership, chap.* 7, *sec.* 107 ; *Doremus vs. McCormick,* 7 *Gill,* 64. These questions should have been left to the jury upon all the evidence and it was error to grant the prayer of the appellee.

With respect to the point, made in the brief of the appellants, as to their right to amend the short note issued with the attachment, it must be said that, if the short note were amended in the particulars mentioned, the result would be the quashing of the attachment.

The appellants took two exceptions to the rulings of the Court below on evidence, but both of them were waived in this Court.

The judgment appealed from will be reversed, and a new trial awarded.

> *Judgment reversed, and*
> *new trial awarded.*

(Decided 2nd July, 1880.)

MILLER, J., filed the following dissenting opinion :

In this case an attachment was issued by the appellants to affect the goods, chattels, rights and credits of " James Duncan & Co.," and was levied upon a stock of goods belonging to that firm which was doing business in the City of Baltimore. The appellee claimed the property by virtue of a subsequent attachment issued and levied upon it, and resisted the condemnation under the appellants' attachment. The question therefore is, was the appellants' attachment rightfully issued, and can it be sustained ? In the affidavit to their account the appellants aver " that George Hughes, Thomas A. Smith, John Waddell and John Caldwell " were " partners, trading as James Duncan and Company," and I take it to be clear

law that in order to sustain their attachment it was incumbent on the appellants to sustain by the requisite proof that each and all of the several parties mentioned in this affidavit, were liable to the appellants as partners of the firm of " James Duncan & Co." In point of fact it is conceded that Hughes and Smith were the only persons actually composing the firm of " James Duncan & Co.," while they, together with Waddell and Caldwell, constituted the firm of " George Hughes & Co.," which did business in the City of New York. The Court below granted an instruction to the effect that the appellants, the plaintiffs, were not entitled to recover because they had offered no evidence that *Caldwell* was a member of the firm of " James Duncan & Co." This means, of course, that there was no evidence *legally sufficient* to go to the jury on that question, and in my opinion the instruction was correct and the judgment should be affirmed.

I find in the record abundant evidence to show that the firm of " George Hughes & Co." became responsible as guarantors for any sales the appellants might make to the firm of " James Duncan & Co.," and if the former firm had been sued in the proper form of action, and in the proper form on this guaranty, there could be no doubt as to their right to recover, but that is not the question the case presents. Evidence sufficient to establish such a guaranty is wholly insufficient to render the individual members of the firm of " George Hughes & Co.," partners or liable as partners of the firm of "James Duncan & Co." It is a familiar principle of the law of partnership as well as of the law of evidence generally, that when it is sought to make a person liable as if he were a partner, evidence must be adduced of his own acts or of what has been done by others with his knowledge and with his assent ; the mere statements, declarations and acts of his alleged co-partners are no evidence as against him. Caldwell could not be made a partner, or made liable as a part-

ner of the firm of " James Duncan & Co." by the mere declarations of Waddell, or of Hughes, or of Smith, or of all of them conjointly, that he was such partner, and beyond this, even if it comes up to that point, the evidence in this record does not go. I have searched the record in vain for any evidence legally sufficient to enable a jury to find that Caldwell was a partner, or was liable to the appellants as a partner of this Baltimore firm of " James Duncan & Co.," and I am therefore constrained to dissent from the opinion of the majority of the Court in reversing this judgment.