### THOMAS FILTER v. MEYER & SCHROEDER.

Delivered May 6, 1897.

**1. Partnership—Liability of Firm For Acts of One Partner.**

The liability of a firm of real estate and loan brokers for the conversion by one of them of a customer's money placed with them to loan does not depend on the fact that the transaction was had by the customer with such member alone, and that the other member had no knowledge of it and received no benefit from it, but upon whether the transaction was in the ordinary scope and manner of the firm business, the customer knowing at the time the money was delivered to the one partner that the partnership then existed.

**2. Same—Circumstances Not Putting on Notice of Fraud.**

The fact that the lender, relying on the honesty of the partner with whom he dealt, failed to examine a deed of trust given as security for the money, and the certificate thereto, did not show such want of care as would defeat his right of recovery, although an examination would have shown that the certificate of record had an impossible date, and that the certificate of acknowledgment was without seal.

**3. Same—Facts Not Showing an Individual Transaction.**

The mere fact that a transaction within the scope of the firm business was had personally with one of the firm, and originated in a suggestion made to him by the customer, before the partnership was formed, will not warrant a finding that it was had with such partner individually.

APPEAL from the County Court of Galveston. Tried below before Hon. WM. B. LOCKHART.

*L. E. Trezevant,* for appellant.—1. To determine whether a given transaction is or is not within the scope of a partnership business, it must be determined whether or not the transaction in question appropriately belongs to or is, by usage or otherwise, implied or incidental to the particular business in which the partnership is engaged. The determination of this question is a function of the court as matter of law, and not of the jury. Story on Part., sec. 113; Proffat on Jury Trial, secs. 275, 278; Rhodius v. Story, White & W. Civ. Cases, sec. 336; Johnston v. Trask (N. Y. Ct. App.), 5 L. R. A., 630; Judge v. Braswell, 13 Bush, 67; Bank v. Hammer, 14 Mich., 212.

2. A partnership must be treated as receiving what any partner receives in the course of transacting the business of the firm, and where one partner, acting within the scope of his authority, obtains money and misapplies it, the firm is answerable for it. McKinney v. Bradbury, Dallam, 444; Pars. on Part., 72-3, 116, 141-2, 153; 1 Lind. on Part., 302-3; Story on Part., sec. 178; 1 Bates on Part., sec. 445; Pollock's Dig. of Part., 48, 24, 49; 10 Chic. Law Jour., 485; Willett v. Chambers, Cowp., 814.

3. As to all matters within the scope of the real or apparent authority of a member of a firm, the presumption is that he acted for and on account

of the firm, and in the absence of actual knowledge on the part of the person seeking to enforce the claim, or of facts that should have put him upon inquiry, the presumption is absolute and irrefutable. McKinney v. Bradbury, Dallam, 444; Richardson v. Thacker, 1 Texas Civ. App., 138; Leddell v. Crain, 53 Texas, 554; Story on Part., secs. 108, 166, 168b; 1 Collyer on Part., p. 649, sec. 412, pp. 657, 293-304; 1 Lind. on Part., 236; 1 Pars. on Part., 185.

*Hume & Kleberg,* for appellees.—1.   In order to bind a firm by contract, express or implied, such contract must be made with the firm.   If one partner only is dealt with, and the circumstances are such as to show that he was acting and was dealt with on his own account, i. e., as principal and not as the agent of the firm, he alone is responsible.   1 Lindl. on Part. (2 Am. ed.), 430, side page 179.

2.   When no credit is given, and there is no expectation originally of looking to one partner for debts incurred by the other, no recovery against the former can be had.   Chapman v. Deveraux, 32 Vt., 616; Floyd v. Wallace, 31 Ga., 688; Watt v. Kirby, 15 Ill., 200.

3.   By the use of ordinary prudence plaintiff could have avoided the theft of his money, and under the general rule of law which forbids a recovery for a loss occasioned by a person's own negligence, he should not be allowed to recover from the defendant Meyer, upon whom he never relied and who never participated in the transaction, received no benefit therefrom, and in fact had no knowledge of it whatsoever, and in no way contributed to such loss.   1 Lindl. on Part., side paging 158, 159; Collyer on Part., 643, sec. 412.

GARRETT, Chief Justice.—This action was brought by Thomas Filter against G. A. Meyer and Charles A. Schroeder to recover of them $600, money of the plaintiff, alleged to have been converted by the defendants, while they were partners, to their own use and benefit.   Schroeder suffered judgment by default, but the defendant Meyer denied liability and averred that the money was fraudulently obtained and converted by the defendant Schroeder to his own use under circumstances such as relieved him though a partner at the time; and upon a trial by jury he recovered judgment on a verdict in his favor.   The defendants were associated as partners and did business as real estate agents and brokers from September 1, 1893, until June 14, 1894.   Their business was to buy and sell real estate and negotiate loans for others.   Prior to September 1, 1893, the defendant Schroeder was engaged in such business alone, and had negotiated a loan for the plaintiff.   At the time of this transaction, which was in July, 1893, the plaintiff told Schroeder that he had $600 more, and that if he had a chance to lend the balance on real estate, to let him know.

After the partnership had been formed, on, to wit, September 10 or 11, 1893, Schroeder sent a clerk in the employment of Meyer & Schroeder with a message to the plaintiff that he wanted to see him at his

office. Plaintiff went to the office of Meyer & Schroeder, and there saw Schroeder, who asked him if he still had the $600 to lend, and informed him that he had a party named Schmidt who wanted to borrow it; and on being told by plaintiff that he still had the money, Schroeder told him he would let him know when he had everything ready. On September 13, in response to a message to bring the money, plaintiff took it to Schroeder, who received it, and delivered the plaintiff a note signed George W. Schmidt and Ida Schmidt, and told him to come back in eight days and get his deed of trust. He called for the deed of trust at the end of that time; Schroeder was not in the city, and he was told to call again. He afterwards called again, and Schroeder gave him what purported to be a deed of trust upon property of the persons whose names were signed to the note. It afterwards turned out that the note and deed of trust were forgeries. They had been forged by Schroeder, who received the money and appropriated it to his own use. Meyer had no knowledge of the fraud. He testified that he had no knowledge of the transaction until after Schroeder's defalcation and forgeries in some other similar transactions were discovered, on June 14, 1894. Plaintiff testified, that when he first called for the deed of trust he told Meyer he had given Schroeder $600 which he loaned out on real estate to George W. and Ida Schmidt; that Schroeder had given him the note and told him to call for the deed of trust, which he had sent to be recorded. Meyer denied this. Plaintiff did not know that the defendants were partners until he called at their office in response to the message. At the time he loaned the money he knew that Meyer was the partner of Schroeder. Plaintiff had confidence and faith in Schroeder's honesty, and also in the honesty of the defendant Meyer.

There was no dispute about its being within the scope of the defendants' business to negotiate loans between parties. Evidence was introduced by the defendant Meyer that it was not the custom for real estate brokers, in effecting loans between people, to pass upon the title to real estate, and they did not prepare deeds of trust; also that it was not the custom to have the money deposited with the broker for the purpose of lending it out; and Meyer himself testified that the manner of conducting the business by his firm was that they took a list of customers having money to lend, and when a person wishing to borrow came, information as to the amount wanted and the nature of the security was obtained from him. A person having that amount to lend was then seen, and if the security should prove satisfactory, and was real estate and the terms of the loan were agreed on, the lender would get an attorney to pass upon the title and prepare the papers. When the papers had been thus prepared and passed upon, they were left with his firm and the lender notified to bring the money, and the firm delivered the papers when that was done. There was also evidence that it would be within the scope of the business, if the customer desired it, for the broker to receive the money and lend it to the borrower and pass himself upon the papers and security. This was stated, however, to be the exception to the ordinary manner of car-

rying on the business. It was shown that the defendant's firm had made loans in that way for the witness Kruger.

Plaintiff contends on this appeal that the court below erred in submitting to the jury, as a question of fact, whether or not it was within the scope of the partnership business of Meyer & Schroeder to receive the money and lend it in the way in which it was pretended to have been loaned in this case; and that the jury should have been instructed, as a matter of law, that the transaction was within the scope of the firm's business.

Mr. Lindley, in his work on Partnership, in stating the law of the liability of partners for the acts of their agents, says: "Every member of an ordinary partnership is its general agent for the transaction of its business in the ordinary way; and the firm is responsible for whatever is done by any of the partners when acting for the firm within the limits of the authority conferred by the nature of the business it carries on." 1 Lindl. on Part., 236. In order for an act to be one within the scope of the business of a partnership, it must be done in the ordinary way in which the business is conducted; and whether or not a particular act is within the scope of the business is a question of fact for the jury, whenever there should be a conflict in the evidence as to whether or not it was done in the ordinary way of the transaction of the firm's business. Crozier v. Kirker, 4 Texas, 257; Hodges v. National Bank, 54 Md., 406; Briggs v. Hubert, 14 S. C., 620; 1 Bates on Part., secs. 317, 430. The liability of the firm, then, for the act of Schroeder would depend upon the question of fact, whether or not he received the money in the transaction of the business in the manner in which it was ordinarily done. He would be authorized by the firm to receive it, if it was usual and customary for such brokers to receive money awaiting investment with borrowers; or if it was the customary way to deliver the money after the borrower had been procured and upon delivery of the securities; or if his receipt of the money was in accordance with the manner of the transaction of the business by his firm. If it was the usual way to deliver the money upon receipt of the securities, because plaintiff trusted to his own judgment or that of the firm, and did not employ an attorney to investigate the title and prepare the papers, though lenders usually did so, ought not to defeat the liability of the firm for the conversion of the money.

"Where one partner acting within the scope of his authority, as evidenced by the business of the firm, obtains money and misapplies it, the firm is answerable for it." 1 Lindl. on Part., 303. Meyer seeks to obviate the force of this rule of law by the exception, that if one partner only is dealt with and the circumstances are such as to show that he was acting and dealt with on his own account, that is, as principal, and not as agent of the firm, he alone is responsible; and the court submitted this question of fact to the jury. The evidence shows that plaintiff, a few weeks before the partnership was formed, had negotiated a loan through Schroeder, and had then told him that he had another sum which he

would like to lend. But a careful examination of the evidence fails to disclose any purpose on the part of the plaintiff to deal with Schroeder on his own account, or to trust him rather than Meyer when the money in controversy was sought to be loaned. Plaintiff knew at the time he delivered the money to Schroeder that Meyer was his partner, but even if this had not been the case, the firm's liability, for anything that appears in the evidence, would not have been affected by the want of such knowledge, for it would be held liable as an undisclosed principal if the evidence showed that the act was within the scope of the partnership business. The charge complained of in the third assignment of error, under this state of the evidence, was therefore erroneous and misleading, for the jury, in the absence of other evidence to show that Schroeder was dealt with on his own account, would very likely assume that the fact that the transaction was had personally with Schroeder, and originated in a suggestion of the plaintiff to Schroeder before the partnership had been formed, was evidence that would authorize them to find it to have been had with him in an individual capacity. The assignment referred to is as follows:

"The court erred in charging the jury, that if they believe from the evidence that the transaction in question was had by plaintiff with C. A. Schroeder as an individual, and not as a member of the firm of Meyer & Schroeder, and was so understood by plaintiff to be had, and that plaintiff did not rely upon the responsibility and integrity of the firm of Meyer & Schroeder, but upon the integrity and responsibility of C. A. Schroeder, then their verdict will be in favor of plaintiff against C. A. Schroeder alone, and in favor of G. A. Meyer, unless they further find that the act of C. A. Schroeder in receiving plaintiff's money to loan, if they find it was his individual act and not the act of the firm, was afterwards ratified by Meyer, in which event they should find for plaintiff."

The fourth assignment of error is: "The court erred in charging the jury that should they find from the evidence that in intrusting his money to be loaned, and in receiving the papers purporting to secure the payment of the same, plaintiff failed to exercise such ordinary care and prudence as persons transacting such business ordinarily exercise under similar circumstances, then their verdict should be in favor of plaintiff against C. A. Schroeder, and in favor of the defendant Meyer."

We think there was positive error in this instruction. There was nothing to cause Filter to apprehend the loss of his money through the dishonesty of Schroeder. If he delivered it to him in the usual course of business and received the note, the information that the deed of trust had been filed for record was not sufficient to cause him to apprehend any fraud on the part of Schroeder. Filter had no cause to suspect that Schroeder was dishonest. The certificate of record to the deed of trust had an impossible date, and there was no seal to the certificate of acknowledgment, and it is contended that an observation of these irregularities would have led to an inquiry which would have disclosed the fraud. But the money was delivered to Schroeder upon his representa-

tion of facts which, if they had been true, would have shown no want of care on the part of Filter in the delivery thereof, and still relying upon the honesty and integrity of Schroeder, no want of ordinary care was shown in his failure to examine the deed of trust and the certificate thereto after he had received it. Story on Part., sec. 108. Meyer should not be allowed to complain that Filter trusted to the honesty of his partner. He is estopped to deny the truth of the false representations of his partner by which the firm obtained possession of the money. 1 Bates on Part., secs. 472, 473. The question is whether or not the act of Schroeder in receiving the money was in the scope of partnership business, and not whether Filter should have trusted him; that is, whether or not it was an act necessary in the transaction of the business in the ordinary manner in whch the firm transacted such, for it is not disputed that it was within the scope of the business to negotiate loans between parties.

It is immaterial upon the facts of this case whether Meyer knew at the time that the plaintiff had delivered the money to be loaned or not. 1 Lindl. on Part., 302, 303. Or whether or not he was aware of the forgeries. 1 Bates on Part., sec. 474; Pollock's Dig. of Law of Part., art. 24. Or whether or not Meyer received any benefit from the transaction. If the evidence had tended to show that the transaction was such an individual transaction of Schroeder's as would exempt the firm from liability, then evidence of the lack of knowledge on Meyer's part would be admissible; also that the firm had received no benefit from the transaction, and that the interest had been charged to Schroeder's private account, for although it may have been an individual transaction, yet if Meyer, with knowledge thereof, received benefit therefrom, the firm would become liable by ratification.

At a former day of this term we affirmed the judgment of the court below without a written opinion. We had considerable difficulty in reaching that conclusion. After a careful re-examination of the testimony and reconsideration of the law of the case, we have reached the conclusion that our decision then was wrong; and, for the reasons hereinbefore stated, have now concluded that the rehearing should be granted and the judgment should be reversed and the cause remanded.

*Reversed and remanded.*