**ELLERD et al. v. ALEXANDER & OLIVER.**
(No. 6962.)

(Court of Civil Appeals of Texas. Austin.
March 31, 1926.)

1. **Venue ⊂⊃28—Residence of defendant, a single man, within county for purpose of training and developing race horses, held to justify overruling defendants' plea of privilege to be sued in another county (Rev. St. 1911, art. 2309).**

In suit on open account in L. county, defendants' plea of privilege to be sued in H. county *held* properly overruled in view of Rev. St. 1911, art. 2309, where it appeared that one of them, a single man, had come to L. county for purpose of training and developing race horses at local fair grounds where he lived, and that he owned no other place of residence, and that he had no property in H. county, except probably some colts.

2. **Attachment ⊂⊃249.**

On motion to quash attachment because bond for attachment was not made payable to defendants, evidence *held* to support finding that bond was made payable to defendants at time writ of attachment was issued, and that their names had been thereafter erased.

3. **Partnership ⊂⊃135—Partner held responsible for feed furnished partnership race horses, though charged to copartner, where he shared in profits from their sale.**

Partner *held* responsible for feed furnished partnership race horses, though feed was charged to copartner, where he told creditor that he would see account paid, and he shared profits from sale of horses.

Appeal from Lampasas County Court; J. Tom Higgins, Judge.

Suit by Alexander & Oliver against J. J. Ellerd and another. Judgment for plaintiffs, and defendants appeal. Affirmed.

A. L. Curtis, of Belton, and W. H. Browning, of Lampasas, for appellants.

T. S. Alexander and Roy L. Walker, both of Lampasas, for appellees.

BLAIR, J. Appellees instituted suit against appellants upon an open account for the sum of $788.01. On the same day they made affidavit and bond in attachment, and the writ of attachment was levied upon certain horses which were afterwards sold on an order of the court. Thereafter appellants filed a plea of privilege, alleging their residence to be in Hale county, Tex. The plea was duly controverted by appellees. On the same day they filed a motion to quash the writ of attachment, because the bond filed and approved as the basis for it was not made payable to the defendants, as required by law. Appellees controverted the motion to quash, alleging that at the time the bond was filed it was made payable to the appellants, but that, since the filing of the bond

and the issuance of the writ of attachment, the names of appellants had been erased therefrom by some person unknown to them. Appellants also filed a general denial and general demurrer. The case was tried to the court without a jury, and the trial judge made the following findings of fact and conclusions of law:

"First. I find that at the time of the filing of suit and service of citation herein and prior thereto the defendant J. J. Ellerd was a resident of the county of Lampasas, Tex.

"Second. I find that at the time of the filing of suit and service of citation herein the defendant W. J. Ellerd was a resident of Lampasas county, Tex.

"Third. I find that the names of J. J. Ellerd and W. J. Ellerd were properly placed in the bond in attachment after the words 'bound to pay,' that said names had been erased.

"Fourth. I find as a fact that the defendants J. J. Ellerd and W. J. Ellerd were indebted to the plaintiffs in the sum of $788.01, and that said sum had never been paid.

"Fifth. I find that the property levied upon and sold under the writ of attachment was the property of the defendant W. J. Ellerd.

"I conclude that this court had jurisdiction of the defendants; that the motion to quash the writ of attachment should be overruled; and that the plaintiffs should have judgment for their debt and a foreclosure of their attachment lien."

[1] Appellants predicate an assignment of error upon each finding of fact and conclusion of law. We do not sustain any of them. On the plea of privilege the testimony shows that J. J. and W. J. Ellerd came to Lampasas for the purpose of training and developing race horses and polo horses at what is known as the Lampasas fair grounds. They were both single men. J. J. Ellerd had been married, but his wife was dead, and he had two minor sons that constituted his family. They came to Lampasas after the schools had closed in Plainview, and remained there until September, and returned to Plainview. J. J. Ellerd owned a residence in Plainview, and his married daughter lived there and kept house for him and his minor sons. W. J. Ellerd was a single man, and he testified:

"I lived out here in Lampasas county at the race track. I had no other business except training horses; never owned a place of residence. It was my intention to stay in Lampasas until we could train and develop the horses and sell if we could. We had a stove, and lived there and cooked and did our eating there. The stall in which I lived was floored and the walls papered. We had placed some of our horses in a pasture in Lampasas and had some at the track. We expected to take some of the race horses off to other tracks to run, but we were leaving some of them here."

He further testified that he had no property in Hale county, except probably some colts. They rented a pasture in Lampasas county, in which some horses were kept. We

think this testimony sufficient to warrant the finding of the trial court that the defendant W. J. Ellerd was a resident of Lampasas county at the time the suit was filed, and at the time citation was served upon him. We find it unnecessary to go further into the question of the residence of J. J. Ellerd, since under the statute, where a plaintiff has a right to sue two or more defendants, he may bring the suit at the residence of any one of them. R. S. 1911, art. 2309; Latham v. Continental Supply Co. (Tex. Civ. App.) 230 S. W. 230; Pearson v. West, 77 S. W. 944, 97 Tex. 238; Littlefield et al. v. Clayton et al. (Tex. Civ. App.) 194 S. W. 194; Pecos & N. T. Ry. Co. v. Thompson, 167 S. W. 801, 106 Tex. 456.

[2] On the issue of whether or not the names of W. J. and J. J. Ellerd were properly placed in the bond of attachment after the words "bound to pay," and that said names had been erased, we find that the testimony sufficiently supports the finding of fact by the trial judge that they were so placed in the bond at the time of its filing, and at the time the writ of attachment issued, and that they had been thereafter erased by some person unknown. The attorney who drew the bond testified that it was his best recollection that he caused the names of J. J. and W. J. Ellerd after the words "bound to pay" to be written in the bond, which was executed on a regular form of bond in attachment. The stenographer who filled in the blanks on a typewriter at the dictation of the attorney testified that it was her best recollection that she wrote therein the names of J. J. and W. J. Ellerd. J. J. and W. J. Ellerd on the day following the levy of the writ of attachment obtained the papers from the clerk of the court in which the suit was filed for the purpose of carrying them to their attorney's office. The attorney testified that some three or four days after the suit was filed appellants brought the papers to his office, and, upon examination, he found that the bond was not made payable to the defendants. He testified that the bond showed no signs of erasure, though no particular examination was made as to erasures at that time. He immediately told the appellants that the bond was bad, and redelivered the papers to them. Appellees' attorney called on the clerk several times before the sale of the horses for the papers, but each time was told that appellants had them. The clerk called on appellants to redeliver the papers several times, but they told him that their attorney was not through with them. The clerk then called upon the attorney, who told him that he had redelivered the papers to appellants, and had instructed them to deliver them back to the court. Appellants admit that their attorney did not keep the papers, but that they kept them. Appellants returned part of the papers some time after the sale, but the oath and bond in attachment were not with them. Appellees made written request of the clerk to obtain these papers, which the clerk succeeded in doing some time later. Immediately upon their being returned the clerk notified appellees' attorney, who came and got the papers, and he testified that the bond showed an erasure where the name of J. J. and W. J. Ellerd should have been written in the bond. There was expert testimony to the effect that the bond showed to have been tampered with, and that probably some kind of acid had been used to erase the names of appellants. The original bond has been certified to us along with the other papers in the case, and without question it shows that some erasures have been made at the place where the names of J. J. and W. J. Ellerd should have been written. Under this state of facts the trial court concluded that the erasure had been made by some person unknown, and we do not feel that we are called upon to disturb this finding of fact.

[3] Complaint is also made that the appellant J. J. Ellerd was in no manner responsible for the indebtedness sued upon, and that he should have been discharged. The trial court concluded from the facts that both J. J. and W. J. Ellerd were liable for the indebtedness sued upon, and we are of the opinion that the testimony supports this finding. J. J. Ellerd testified that the horses in question, feed for which the account in controversy was contracted, were partnership horses, and that he shared in the profits from their sale.

Kyle Oliver testified that:

"J. J. Ellerd bought some of the goods, and they were charged to W. J. Ellerd. * * * J. J. Ellerd told me he would see the account paid."

W. J. Ellerd admitted that he owed the account in suit. Under such facts we think the trial court's judgment that both W. J. and J. J. Ellerd were responsible for the account sued upon is correct. J. J. Ellerd is responsible for the account as a partner under the following authorities: Cothran v. Marmaduke et al., 60 Tex. 370; and Filter v. Meyer, 41 S. W. 152, 16 Tex. Civ. App. 295.

The judgment will be affirmed.