TEXAS & P. RY. CO. v. CONWAY.
(No. 1548.)

(Court of Civil Appeals of Texas. Texarkana. Jan. 4, 1916. Rehearing Denied Jan. 13, 1916.)

1. REMOVAL OF CAUSES ☞107—REMAND BY FEDERAL COURT—REVIEW.

Where, upon the removal of a cause from the state to the federal court, the latter remanded it, the state court's jurisdiction to try the cause could not be questioned on the ground that the remand was wrongful, since the action of the federal court in that respect is not subject to review by the state courts.

[Ed. Note.—For other cases, see Removal of Causes, Cent. Dig. §§ 178, 225–232, 234; Dec. Dig. ☞107; Appeal and Error, Cent.Dig. § 725.]

2. RAILROADS ☞22 — PERSONAL INJURIES — NONRESIDENT PLAINTIFF—VENUE.

Where plaintiff, while a resident of Texas, was injured by defendant railroad's train, but had moved to another state at the time he commenced his action in Texas, the action was properly brought in a county other than that in which he resided at the time of the injury, and in which the accident occurred, since the provision of Vernon's Sayles' Ann. Civ. St. 1914, art. 1830, subd. 26, that a nonresident may sue in any county where the corporation operates its railroad, or in which it has an agent, refers

to residence at the time when suit is commenced, and not to the time of injury.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 46–50; Dec. Dig. ☞22.]

3. DAMAGES ☞132—INJURED EMPLOYÉ—EXCESSIVE DAMAGES.

Where plaintiff employé's leg was injured by his slipping from the defective footboard of defendant railroad company's tender, and it appeared that plaintiff was 40 years of age, with an earning capacity of $110 to $175 per month, that the injury would probably disable him from working and would cause him severe mental and physical pain and suffering for life, and that he was likely to die at any moment, a verdict of $20,000 was not so excessive as to indicate that the jury was influenced by other than proper motives in arriving thereat.

[Ed. Note.—For other cases, see Damages, Cent. Dig. §§ 372–385, 396; Dec. Dig. ☞132.]

4. MASTER AND SERVANT ☞297—PERSONAL INJURY—FINDINGS—CONSISTENCY.

Where, in an action for such injuries, the jury found that plaintiff's duties required him to use the footboard, but that proper attention to such duties would not have caused him to observe its defective condition, such findings were not necessarily contradictory.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1195–1198; Dec. Dig. ☞297.]

Appeal from District Court, Harrison County; H. T. Lyttleton, Judge.

Action by E. J. Conway against the Texas & Pacific Railway Company. Judgment for plaintiff, and defendant appeals. Affirmed.

This was a suit by appellee against appellant for damages for personal injury suffered by him, in which judgment was rendered in his favor for $20,000. It was commenced in the district court of Harrison county, from which, on application of appellant, it was removed to the United States District Court for the Eastern District of Texas, which, on motion of appellee, remanded it to the court in which it was commenced.

It appears from the record that during the night of April 3, 1914, appellee, in the performance of his duty as a switchman in appellant's yards at Bonham, stepped upon the footboard attached to the tender of the engine then being used in switching cars. The footboard should have been level, but, instead, as the testimony conclusively showed, it was "very badly bent towards the ground," which "gave it a slanting position." Because of the position of the board, appellee's foot slipped from and went under it when he stepped upon it. He testified:

"In attempting to get on the footboard my left leg was caught between the footboard and the rail. My left hand was a hold of the grabiron on the flat car. My right hand was going everywhere trying to catch something. My left knee and leg was inside the rail, and my foot dragging on the ties. The footboard caught my knee, and was pressing my knee against the rail. I was dragged in this position, as near as I could estimate, about 70 feet. I realized at the time the danger I was in. It was hold on or get killed. I certainly realized the situation. I held on the best I could to the flat car with my left hand. I knew that I was in danger.

but couldn't tell what would be the result. My strength held out, and I didn't get hung up on anything to tear my hold loose. I was a very strong man and had a very strong arm, and that was the only thing I had to rely on. It inflicted severe injuries on my leg. It sprained the left knee and ankle, and also my side, and caused a sprain of the shoulder. I could not raise the shoulder for several days. On the outside of the left knee the skin was scratched off and showed the white bone in one place, a cut across the cap here and one here. The right shin had a four-inch skin wound across it, and the big toe there was bruised on the right foot. The wheel caught the shoe here and the shoe bursted. The ligaments and muscles were twisted and torn. It twisted my leg like a rope. When my right foot came loose it threw me back down and left me hanging with one hand. My left leg was fastened between the rail and foot board, and was twisted."

The judgment involves findings, and we find, that appellant, as charged against it, was guilty of negligence, which was a proximate cause of the injury to appellee, in that it permitted the footboard to become and be out of repair as stated above; that the risk appellee incurred in stepping upon the footboard as he did was not one he assumed; and that he was damaged in the sum of $20,-000.

F. H. Prendergast, of Marshall, for appellant. S. P. Jones and T. P. Harte, both of Marshall, for appellee.

WILLSON, C. J. (after stating the facts as above). After the cause was remanded by the federal to the state court, appellant insisted that the latter court thereby did not acquire jurisdiction to try it, because, it asserted, the federal court had power to try it, and therefore had no right to remand it to the state court; and further insisted that because the injury to appellee occurred in Fannin county, where he at the time resided, he must have commenced his suit in that court, and did not have a right to sue in Harrison county. The action of the court below in overruling these contentions is made the basis of the first and second assignments.

[1] So far as the first of the two contentions is concerned, it is enough to say that the action of the federal court in remanding the cause is not subject to revision by this court. Telegraph Co. v. Luck, 91 Tex. 178, 41 S. W. 469, 66 Am. St. Rep. 869.

[2] It conclusively appeared (1) that appellee was injured in Fannin county, Tex., and that he resided in that county at the time he was injured; and (2) that he resided in Carroll county, Ark., at the time he commenced his suit. Therefore, whether the second of the two contentions should have been sustained or not depends, first, upon whether subdivision 26 of article 1830, Vernon's Statutes, should have been so construed as to require him to sue in said Fannin county, or whether it should have been so construed as to authorize him to sue as he did in Harrison county, Tex.; and, second, upon whether, if he must have sued in Fannin county, it

appeared that appellant had waived its right to insist that he do so.

The subdivision of article 1830 referred to is as follows:

"All suits against railroad corporations, or against any assignee, trustee or receiver operating any railway in the state of Texas, for damages arising from personal injuries, resulting in death or otherwise, shall be brought either in the county in which the injury occurred, or in the county in which the plaintiff resided at the time of the injury; provided, that if the defendant railroad corporation does not run or operate its railway in or through the county in which the plaintiff resided at the time of the injury, and has no agent in said county, then said suit shall be brought either in the county in which the injury occurred, or in the county nearest that in which the plaintiff resided at the time of the injury, in which the defendant corporation runs or operates its road, or has an agent; and provided, further, that, in case that the plaintiff is a nonresident of the state of Texas, then such suit may be brought in any county in which the defendant corporation may run or operate its railroad, or may have an agent; provided, that, when an injury occurs within one-half mile from the boundary line dividing two counties, suit may be brought in either of said counties."

It will be readily seen that if the language used in the proviso, to wit, "in case the plaintiff is a nonresident of the state of Texas," refers to the time when he commenced his suit, and not to the time when he was injured, appellee had a right to sue in Harrison county; for he was then a nonresident of this state and appellant then operated its line of railway and had an agent in that county.

Before the enactment of the subdivision set out above of article 1830, a person having a cause of action for damages for personal injury against a railroad company, without reference to whether he was a resident or nonresident of this state, might have sued thereon in any county in which the company had an agent or into which its line of railway extended. Subdivision 24, art. 1830, Vernon's Statutes. The effect of the enactment of subdivison 26 was to so limit the right of a resident of this state having such a cause of action as to require him to sue thereon in the county where he was injured, or in the county where he resided when he was injured, unless the company did not have an agent or did not operate its line of railway there, in which event he was authorized to commence his suit in the county where the company had an agent or operated a line of railway nearest the one in which he resided at the time he was injured. The main purpose of the enactment of subdivision 26 seems to have been to so limit a resident plaintiff's right; for the right of a nonresident of the state having such a cause of action to sue thereon in any county in the state where the company had an agent or where it operated a line of railway not only was not thereby in any way limited, but, on the contrary, was expressly affirmed. Why the Legislature thought it proper to discriminate against a resident of this state

having a cause of action for damages for personal injury against a railway company, by limiting a right it conferred without limitation upon a nonresident having such a cause of action, is not disclosed by anything appearing in their enactment. But that they did so is plain. As before the enactment of subdivision 26 a nonresident, without reference to whether he had ever been a resident of the state or not, and without reference to the county in which he was injured, might have commenced a suit for damages for personal injury he had suffered in any county where the company had an agent or operated a line of railway, we see no reason why a statute expressly affirming such a right in a nonresident should be construed as denying it to him because he was a resident of the state at the time the cause of action arose in his favor. There is nothing in the statute indicating that the Legislature intended to discriminate between nonresidents by denying to one who had removed to another state a right it conferred upon one who had never resided here. On the contrary, the language used in the statute indicates, we think, that it was intended to apply in favor of all persons who were nonresidents of this state at the time they commenced suit against a railway company for damages for personal injury suffered by them in this state. Being of opinion that appellee, because a nonresident of the state of Texas at the time he commenced his suit, had a right to commence and prosecute it in Harrison county, where appellant had an agent and operated a line of railway, it is not necessary, as it would be if we were of a contrary opinion, to determine whether appellant had waived a right it would then appear it had to have the cause tried in Fannin county.

[3] In the third and fourth assignments the verdict is attacked on the ground that it is excessive. It is not pretended that there is anything in the record, except the amount of the verdict, indicating that the jury in assessing the damages were influenced by other than proper motives. When the injury the jury had a right to believe from the testimony appellee suffered is kept in mind, we do not think the amount of their verdict indicates that their judgment was controlled by any other consideration than an honest desire to discharge their duty by awarding to appellee a sum which would compensate him for the injury he sustained. At the time he was injured, appellee was 40 years of age and had an earning capacity of from $110 to $175 per month. The jury had a right to believe from the testimony that the injury he sustained probably would permanently disable him from engaging in remunerative labor. Moreover, they had a right to believe he would suffer severe physical and mental pain as a consequence of the injury as long as he lived, and that as a further consequence thereof he was liable to die at any moment. They might very well, we think, have concluded that the condition the injury left him in was worse than it would have been had he lost his leg entirely as a result thereof.

[4] Special issues were submitted to the jury. Among them were two, as follows:

(1) "Did Conway's duties require him to use the footboard on the engine in performing his regular duties?" The jury answered that they did.

(2) "If Conway had given attention to the duties required of him in performing his duties, would he have observed the condition of the footboard?" The jury answered that he would not.

In propositions under the fifth, sixth, and seventh assignments the findings set out above are attacked on the ground that they contradict each other; and the second of the two is further attacked on the ground, it seems, that it was without support in the testimony. We do not think the findings are necessarily contradictory. The jury doubtless meant by the first that it would have been appellee's duty, had an occasion requiring him to do so arisen, to use the footboard; and by the second that in the discharge of his duties on the night when he was injured it had not been necessary for him to use the footboard before he stepped upon and slipped off of it, and he had not been called upon to observe, and therefore did not know, its condition. Appellee testified that he did not know the footboard was bent until after he was injured. The jury, we think, might very well have concluded that in giving the attention he should have given to the duties he was engaged in performing, and not having had occasion before he was injured to use the footboard, as he testified was true, he would not have discovered its condition.

The judgment is affirmed.

---

⟨⟩For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes