**PANHANDLE & S. F. RY. CO. v. SMITH.**

No. 4839.

Court of Civil Appeals of Texas. Amarillo.

Jan. 3, 1938.

Rehearing Denied Jan. 24, 1938.

Terry, Cavin & Mills, of Galveston, Willis, Studer & Studer, of Pampa, and Hoover, Hoover & Cussen, of Canadian, for appellant.

John F. Sturgeon and Walter E. Rogers, both of Pampa, and Eagleton, Waechter, Yost, Elam & Clark, of St. Louis, Mo., for appellee.

STOKES, Justice.

This is an action for damages for personal injuries instituted by appellee, Edgar F. Smith, against appellant in the district court of Gray county on the 21st of December, 1936. He alleged that while employed by appellant in its switchyard at Amarillo on or about April 19, 1936, and while discharging his duties as a switchman in the usual course of his employment, he passed between the ends of two box cars in order to adjust the coupler, and, while so engaged, a moving car struck

·the car upon which he was working, causing it to strike him and crush his left hand between the couplers of the two cars between which he was working.

In due time appellant filed its verified plea of privilege to be sued in Potter county, alleging that its domicile and principal offices were located in that county and making other allegations in keeping with the usual form of such pleas.

Appellee controverted the plea of privilege and alleged he was a resident of Mokane, in the state of Missouri, and that appellant was a railway corporation engaged in the business of operating a railway system and owned a line of railroad which traversed both Potter and Gray counties in the state of Texas. He sought to lay venue in Gray county under the provisions of subdivision 25 of article 1995 of the Revised Civil Statutes of 1925, and especially the latter portion of that subdivision which provides that, if the plaintiff is a nonresident of this state, suit may be brought in any county in which the defendant corporation may run or operate its railroad or have an agent.

The plea of privilege and controverting affidavit were submitted to the court without a jury, and on the 22d of January, 1937, after hearing the evidence, the court found that appellee was a nonresident of the state of Texas at the time the suit was filed; that the suit was for damages arising from alleged personal injuries; and that appellant was operating its railroad through, and had an agent in Gray county. Judgment was entered, overruling the plea of privilege, to which appellant duly excepted, gave notice of appeal, and has perfected its appeal to this court.

The case is presented here upon a single assignment of error which challenges the judgment of the trial court in overruling its plea of privilege upon the ground that the place where the alleged injury occurred and where the undisputed evidence showed the plaintiff resided at the time the injury was received by him was in Potter county, to which it sought in its plea of privilege to have the case transferred.

Two questions of law are presented by the assignment and proposition, viz.: First, does the latter portion of subdivision 25 of article 1995 of the Revised Civil Statutes have reference to the time the personal injury is received by the plaintiff, or to the time when the suit is filed? and, second, Do the facts presented in this case establish, as a matter of law, that appellee was a nonresident of this state at the time to which the statute refers?

Subdivision 25 relates to suits against railroad corporations for damages arising from personal injuries. It provides that such suits shall be brought either in the county in which the injury occurred or in the county in which the plaintiff resided at the time of the injury. Further provisions are to the effect that, if the railroad corporation does not operate its railway in or through the county in which the plaintiff resided at the time of the injury, and has no agent in that county, then the suit shall be brought either in the county in which the injury occurred or in the county nearest that in which plaintiff resided at the time of the injury in which the defendant corporation runs or operates its road or has an agent. Immediately following those provisions is the provision of the statute involved in this case which reads as follows: "If the plaintiff is a non-resident of this State, then such suit may be brought in any county in which the defendant corporation may run or operate its railroad, or have an agent."

Appellant asserts that this latter provision of the statute takes the same form and carries the same meaning as its former provisions, and contends that the nonresidence of the plaintiff referred to in this latter portion of the subdivision relates to the time the personal injury occurred and not to the time the suit is filed. It will be noted that in all former provisions of the subdivision the past tense is used. Its first provision is that suits arising from personal injuries resulting in death or otherwise shall be brought either in the county in which the injury "occurred" or in the county in which the plaintiff "resided" at the time of the injury. Its second provision is to the effect that, if the railroad corporation does not run or operate its railway in or through the county in which the plaintiff resided at the time of the injury, then the suit shall be brought either in the county in which the injury "occurred" or in the county nearest that in which the plaintiff "resided" at the time of the injury in which the defendant runs or operates its road or has an agent. Immediately following these provisions is the

clause of the statute involved in this case, and it will be noted that the tense is changed from the past to the present. The provision is that: "If the plaintiff *is* a non-resident of this State, then such suit may be brought in any county in which the defendant corporation may run or operate its railroad, or have an agent."

We think the change of the tense in which the Legislature expressed itself in the statute is of important significance. The subject of the entire subdivision is the filing of the suit. The purpose of it is to guide the court in determining the question of where the suit should be filed. In effect, it says to the court that, if, at the time the suit is filed, it be found the injury occurred in X county, the venue is properly laid in that county, or if, at the time the suit is filed, it be found that plaintiff was a resident of Z county at the time he was injured and the railway company has a railroad or an agent in Z county, the venue is properly laid in that county. But if, at the time the suit is filed, it be found the plaintiff is, at that time, a nonresident of the state, then the venue may be laid in any county in which the defendant operates a railroad or has an agent. The quoted portion of the statute has reference to a class of persons entirely different from those to which the first portions of the subdivision apply and might well have been segregated into a separate subdivision. If it had been, uncertainty or confusion as to its meaning probably would not have arisen. The fact that two or more classes of persons are referred to and incorporated into the entire subdivision does not change the meaning of its various portions, however, and it is likely that, when Chief Justice Brown laid down the questions to be decided by the Supreme Court in the case of Pecos & N. T. Ry. Co. v. Thompson, 106 Tex. 456, 167 S.W. 801, 802, he concluded that but one interpretation could be placed upon that portion of the statute here involved. That case involved a state of facts similar to those in this case, and the suit was filed in Roberts county. The question arose as to whether or not Thompson was a resident of Potter county and, after quoting the petition and the statute, the court said: "The inquiry to be made is: Do the facts of this case show that Thompson was at the time of the institution of this suit a nonresident of this state within the meaning of the statute quoted."

This language clearly indicates the absence from the mind of the writer of that opinion any question as to the proper construction of the portion of the statute here involved. Manifestly he was of the opinion that it referred to the time the suit was filed and not to the date of the injury. It is true this particular question was not raised in that case, but Justice Brown no doubt gave it thorough consideration, and, in laying down the question to be decided, he placed the time as of the date the suit was filed.

In Texas & P. Ry. Co. v. Conway, 182 S.W. 52, 54, the Texarkana Court of Civil Appeals had this identical question before it. In that case the plaintiff was injured in Fannin county and resided in that county at the time of the injury. At the time the suit was filed, however, he resided in Carroll county, Ark., and the decision of the case turned upon the question of whether the portion of subdivision 25 here involved should be construed so as to require the plaintiff to sue in Fannin county where he resided at the time of the injury, or whether its provisions authorized him to bring the suit in Harrison county where it was filed. After quoting the entire subdivision and commenting at length upon its provisions, Justice Willson, speaking for the court, said:

"As before the enactment of subdivision 26 a nonresident, without reference to whether he had ever been a resident of the state or not, and without reference to the county in which he was injured, might have commenced a suit for damages for personal injury he had suffered in any county where the company had an agent or operated a line of railway, we see no reason why a statute expressly affirming such a right in a nonresident should be construed as denying it to him because he was a resident of the state at the time the cause of action arose in his favor. There is nothing in the statute indicating that the Legislature intended to discriminate between nonresidents by denying to one who had removed to another state a right it conferred upon one who had never resided here. On the contrary, the language used in the statute indicates, we think, that it was intended to apply in favor of all persons who were nonresidents of this state at the time they commenced suit against a railway company for damages for personal injury suffered by them in this state.

Being of opinion that appellee, because a nonresident of the state of Texas at the time he commenced his suit, had a right to commence and prosecute it in Harrison county, where appellant had an agent and operated a line of railway, it is not necessary, as it would be if we were of a contrary opinion, to determine whether appellant had waived a right it would then appear it had to have the cause tried in Fannin county."

■ The Supreme Court denied a writ of error in that case, and, in our opinion, the language of that portion of subdivision 25 which refers to the controversy here involved, when closely analyzed, is not susceptible of any other construction. We hold, therefore, that, under the provisions of the statute, if appellee was a nonresident of this state at the time the suit was filed in Gray county, it being admitted that appellant owns and operates a line of railway into and through that county and has a local agent there, appellee had the right to file and prosecute it in that county.

■ Upon the second question, viz., do the facts of the case establish as a matter of law the nonresidence of appellee at the time the suit was filed, the evidence shows that appellee moved to Callaway county, in the state of Missouri, in 1910; that he married in 1915 and has a family consisting of himself, his wife, and three children. In 1920 he acquired a farm of 120 acres, located in Callaway county, Mo., near Mokane, upon which his family has since resided. He has paid his poll taxes and voted in that county since 1915, and has never paid a poll tax nor voted in Texas. His children attended school in Callaway county. On January 1, 1927, he procured employment from appellant as brakeman, working principally in the switching yard at Amarillo, and continued in that employment until he was injured April 19, 1936. The evidence shows that on occasions he worked at Pampa and Borger while working for appellant, but kept a room at various boarding houses at Amarillo. He had a small trunk and bag, smoking stand, and a small musical instrument which he kept in his room, and three times each year he would procure leave of absence and return to his family at Mokane, Mo., where he would spend from a few weeks to three months. These visits were made principally in the spring and fall, and he testified that in the spring of the year he would assist his boys in preparing for the crops on the farm. During his visits in the fall he would assist them in gathering the crops. This continued until the date of his injury, after which he went to a hospital at Amarillo, where he remained a number of weeks, and then was transferred to the company's hospital at Topeka, Kan., where he remained until June 22, 1936. From there he returned to Amarillo, remaining there for a week to look after some business matters, after which he returned to his family at Mokane, Mo., where he has since remained. Upon the occasions when he would return to Mokane he procured from the company leaves of absence, and on one or two occasions these were extended. He procured such a leave when he was injured, and it has never been formally canceled or surrendered. Appellee testified his understanding of the rules of the company was that, when leaves of absence were not extended, they automatically were canceled. Since returning to Missouri the last time he has continued to live with his family in their home on the farm in Callaway county, and has assisted in the farm work, eating and sleeping in the house, and has never at any time returned to work for appellant or resided at Amarillo or elsewhere in Texas. Appellee and other witnesses testified at length concerning his local places of residence, operations, and conduct during the ten years he was employed by appellant, and a large portion of the record and briefs is devoted to the question of the place of appellee's local residence prior to the injury. In the view we take of the case, the question of where appellee resided prior to the injury becomes immaterial. In our opinion, the evidence is amply sufficient to warrant the conclusion that, after he was injured and returned to Mokane from the hospital and at the time this suit was filed in the district court of Gray county, he was a resident of Callaway county, Mo., and not of Potter county or any other county in Texas. It is true that, when the suit was filed, his leave of absence had not been canceled by appellant nor surrendered by appellee, but he had at no time returned to resume his employment with appellant, and the most that can be said in favor of his being a resident of Potter county at the time the suit was filed is that there existed a possibility he would be recalled

by the company and return to Potter county to resume his employment. The record does not show the length of time for which he was granted a leave of absence after the alleged injury, but the testimony indicates it had expired before the suit was filed. We do not think the possibility of these contingencies would be sufficient to establish his residence in Potter county at the time the suit was filed, and, in our opinion, the trial court was correct in overruling the plea of privilege.

From what we have said it follows that, in our opinion, no error is shown in the ruling and judgment of the trial court, and its judgment will be affirmed.