PECOS & NORTHERN TEXAS RAILWAY COMPANY v. W. C. THOMPSON.

No. 2370.   Decided June 17, 1914.

### 1.—Venue—Questions of Law and Fact—Supreme Court.

In the trial court and on appeal the question whether plaintiff was a nonresident of the State, and as such entitled to bring suit against a defendant railway company in any county in which it operated its road, was one of fact. But on writ of error from the Supreme Court it was one of law, and a finding that he was such non-resident could only be reviewed as error of law. (P. 457.)

### 2.—Residence Defined.

Residence means living in a particular locality, and simply requires bodily presence there, while domicile means living in that locality with intent to make it a permanent home. (P. 460.)

### 3.—Venue—Suit Against Railway—Case Stated.

In case of a plaintiff against a railway company who had been for a year and a half a transient laborer at various employments in several States, and for more than a month preceding his injury was employed at Amarillo and on defendant's lines extending from there into New Mexico and into Oklahoma, his own evidence, here considered, is held insufficient to show that he was a non-resident of Texas, or entitled, as against a plea to the venue, to bring suit in a county other than that in which the injury occurred on which he sued. His own testimony being legally insufficient to support the venue, the case, on reversal, is remanded for trial to the county in which the injury occurred. (Mr. Justice Hawkins concurs in reversal, on the ground of error in the charge on this issue, but dissents to the judgment changing the venue, holding the question of non-residence one of fact under the evidence.) (Pp. 457-461.)

Error to the Court of Civil Appeals, Seventh District, in an appeal from Potter County.

Thompson sued the railway company and recovered judgment, which was affirmed on appeal by defendant, who thereupon obtained writ of error.

H. E. Hoover, Terry, Cavin & Mills and A. H. Culwell, for plaintiff in error, on the question of plaintiff's residence, cited:   Gulf, C. & S. F. Ry. Co. v. Rogers, 37 Texas Civ. App., 99; Taylor v. Wilson, 99 Texas,

651; Sayles' Statutes, art. 1733; Stout v. Leonard, 37 N. J. L., 492; Weitkamp v. Loehr, 53 N. Y. Sup. Ct., 79; Roberts v. Yarborough, 41 Texas, 449; Endlich on Interp. of Statutes, sec. 186; O'Connor v. Cook, 26 S. W., 1113.

*Barrett & Jones, N. A. Stedman,* and *F. A. Williams,* for defendant in error.—Plaintiff was a "transient person" after leaving Alabama, and acquired no residence elsewhere. Twining v. Elgin, 38 Ill. App., 361; Middlebury v. Waltham, 6 Vt., 202; 28 Am. & Eng. Ency. of Law, 251; McMullen v. Guest, 6 Texas, 281; Baker v. Wofford, 4 Texas, 122; Bonner v. Hearne, 75 Texas, 254; I. & G. N. Ry. Co. v. Elder, 44 Texas Civ. App., 605; G., H. & S. A. Ry. Co. v. Cloyd, 78 S. W., 43; G., C. & S. F. Ry. Co. v. Overton, 101 Texas, 583; Blucher v. Milsted, 31 Texas, 623; Brown v. Boulden, 18 Texas, 432. We also quote Bouvier's definition: "Personal presence in a fixed and permanent abode. 20 Johns (N. Y.), 208; 1 Metc. (Mass.), 251."

"A residence is different from domicile, although it is a matter of great importance in determining the place of domicile. See 13 Mass., 501; 5 Pick (Mass.), 370; 1 Metc. (Mass.), 251; 2 Gray (Mass.), 490; 19 Wend., N. Y., 11; 11 La., 175; 5 Me., 143. Domicile. Residence and habitancy are usually synonymous. 2 Gray (Mass.), 490; 2 Kent, Comm., 10th ed., 574. Residence indicates permanency of occupation, as distinct from lodging or boarding, or temporary occupation, but does not include so much as domicile, which requires an intention continued with residence. 19 Me., 293; 2 Kent Comm., 10th ed., 576."

Proof of the facts as to residence in Alabama made a prima facie case which had to be overcome, and it would seem that this ought to end the question for this court. T. & P. Ry. Co. v. Levine, 87 Texas, 439-440; Scott v. Railway Co., 93 Texas, 628.

MR. CHIEF JUSTICE BROWN delivered the opinion of the court.

A plea to the jurisdiction of the District Court of Roberts County was filed, claiming that the venue was properly in Potter County, was submitted to the jury by the trial court and the issue was decided adversely to the defendant below. The plaintiff in error presented the issue on appeal to the Court of Civil Appeals for the Seventh District, and that court also decided adversely and the same question is now presented to this court. In the trial court it was an issue of fact, but in this court it is an issue of law; that is, this court must take the view of the evidence most favorable to the contention of the defendant in error; and if there be sufficient evidence to support the finding of the jury, we will not disturb their verdict no matter what may be our view of the evidence.

We copy the statement of the evidence as it appears in the brief of defendant in error filed in this court, which follows:

"Plaintiff was born in Kentucky and, during his childhood, was carried by his mother to Alabama, where, it is undisputed, both resided until June 20, 1908. Plaintiff is a laboring man and the evidence in-

dicates that before the last named date he had had occasional employment away from home. He had worked as brakeman for the L. & N. Ry. Co., running between Mobile and New Orleans, spending his time between the two places and partly in one and partly in the other, but keeping his home in the same little town near Mobile, and visiting it occasionally. His mother then and now owns a home in Alabama, which he says he gave her, paying the principal part of the purchase money, and he lived in the same town. He has two children, five and three years old, respectively, and two sisters, all in Alabama. The children are under the charge of his mother generally, but when he testified were with his sisters. He and his wife separated and were divorced in 1908, and on June 20, 1908, he left his home, leaving, not only his children, but his bedstead, beds, chairs and parts of his clothes in the house. His intention when he left was to return when he made some money. He gives the following account of his wanderings between June 20, 1908, when he last left home, and January 18, 1910, when he received the injury for which this suit was brought: He first went to Mobile, stayed there a day and night; thence to Meridian, Miss.; thence to Jackson, Tenn.; thence to Louisville, Ky., and stayed two nights, trying for work and failing; thence to Chicago, staying one day and night; thence to Minneapolis, Minn., staying three weeks, working for a motor company; thence to ————, Minn., working in the harvest fields; thence to Fargo, N. D., staying until the last of January, 1909, working in harvest fields, in an elevator and as switchman for the Northern Pacific; thence back to Minneapolis, staying two or three months, working for the same motor car company as before; thence about April 1, 1909, to Haileville, Okla., which is near Amarillo, staying how long he did not remember, but working seventeen days for the Rock Island Railway Company. He says he does not remember what became of him after this, but he next worked for the Texas Oil Company, near Beaumont, commencing July 5, 1909. He was in the town of Beaumont for a while before and after working for the oil company, eating at restaurants and sleeping at different places, at no two the same night. He worked for the oil company from July to November, 1909, on a pipe line, beginning thirty miles and quitting one hundred miles from Beaumont, and sleeping and eating in camp, without definite time of employment, but employed for as long as his services were wanted and he chose to stay.

"When he left camp he stayed in Beaumont a week 'rambling around,' camping out and fishing part of the time, and sleeping and eating here and there. He let his people know where he was and received letters from them at Beaumont. From Beaumont he went to Fort Worth, applying for work at Somerville on the way. At Fort Worth he was told that the Santa Fe was begging for men at Amarillo and he went there and obtained a position with the defendant, after having applied in vain to the Fort Worth & Denver City Railway Company. Speaking of these wanderings, he says it was a fact that during the time between

his departure from Alabama and the time when he was hurt, he was 'just floating around,' getting a job whenever and wherever he could.

"This brings us down to the time of his arrival at Amarillo, where he obtained employment December 5 or 6, 1909, and was hurt January 18 following. The employment was on what was called 'the chain gang,' and was a brakeman, having no regular job, but going when and where ordered. In getting the employment he had to give an address at which he could be found when needed, so as to be notified to go on duty, and gave as his address a room in the Santa Fe Hotel. As a matter of fact, he did not regularly sleep in that room nor eat at that hotel, even when in Amarillo, but slept often in the caboose and in different rooms and places when he occupied rooms at all. His runs were between Amarillo and Clovis, N. M., and between Amarillo and Waynoka, Okla. He was sometimes in Panhandle—sometimes in Canadian—sometimes in Miami. Of the month and twelve days between his employment and injury he spent about ten days and seven to ten nights in Amarillo and about ten days in Waynoka, spending more time in the latter place than in the former, because of the longer lay-over there. He never had washing done in Amarillo, but did his own washing at Waynoka and Clovis. He mailed letters from any place at which he happened to be, and the only ones received were at Canadian and Clovis. He has sent money to his mother since he left Alabama, some as late as the morning of his injury. He had never voted since he left Alabama. In the application for employment he gave Amarillo as his address and never changed it, because he had none and that could be his address as well as any other place. During this employment he was first at one place and then another—in Clovis, Waynoka, Canadian, Miami, and Panhandle, and could have gotten mail at either place. He never told people to address him at Amarillo. His headquarters were not at the Santa Fe Hotel all the time. He didn't change the address given in his application, but notified the call boy where to find him. Told them at the Santa Fe Hotel. Was not at that hotel more than ten nights. He never stayed at any place long enough to acquire a home; had no headquarters at Beaumont or Amarillo. Canadian was as much headquarters as Amarillo; received orders there several times. Had two lay-offs, one at Amarillo, one at Waynoka. Had no room, grip or trunk at Amarillo, and never called that place home. Kept his clothes in the caboose. He had formed and declared his purpose to quit."

The venue in this character of cases is prescribed by the 26th section of article 1830, volume 1, McEachin's Digest:

"All suits against railroad corporations, or against any assignee, trustee or receiver operating any railway in the State of Texas, for damages arising from personal injuries, resulting in death or otherwise, shall be brought either in the county in which the injury occurred, or in the county in which the plaintiff resided at the time of the injury; provided, that if the defendant railroad corporation does not run or operate its railway in, or through, the county in which the plaintiff resided at the time of the injury, and has no agent in said county, then said suit shall be brought

either in the county in which the injury occurred or in the county nearest that in which the plaintiff resided at the time of the injury, in which the defendant corporation runs or operates its road, or has an agent; and provided, further, that, in case that the plaintiff is a non-resident of the State of Texas, then such suit may be brought in any county in which the defendant corporation may run or operate its railroad, or may have an agent; provided, that when an injury occurs within one-half mile from the boundary line dividing two counties, suit may be brought in either of said counties."

It will be seen from this provision of the statute that the venue as a general rule of practice is fixed in the county where the injury occurred or where the plaintiff resided at the time of the injury, if he had his residence in any part of the State. There are two provisos embraced in the statute under which suit may be brought in a county other than that in which the injury occurred. The second proviso accords to the plaintiff, who is a "*non-resident of the State,*" the right to institute such action in any county through which the railroad runs or operates a railroad, or may have an agent. This proviso is in the nature of an exception to the general rule prescribed by the statute for determining the venue of such suit, and being an exception it must be strictly construed. Lewis' Sutherland Statutory Construction, vol. 2, sec. 352. Applying this rule of construction to the facts of this case it devolves upon the plaintiff to prove that he was a *non-resident* of the State of Texas, otherwise he could not maintain his action in any county other than that in which the injury occurred.

In this view of the case it becomes unimportant to consider the question of Thompson's "residing" at Amarillo at the time of the injury; for if he was not a *non-resident* of the State, no matter where he resided in the State, he must have filed his suit in the county where the injury occurred.

The inquiry to be made is, do the facts of this case show that Thompson was at the time of the institution of this suit a non-resident of this State within the meaning of the statute quoted. I have carefully examined the authorities for a definition of the term "non-resident," and have found them to be uniform in holding that he was not such within the meaning of the law. In order to have the privilege of the exception to the general rule fixing the venue, which would give him the right to choose any county through which the railroad was operated, he must have been a resident of some other State, territory or country, that is, he must be at the time "living" outside of Texas.

"Residence means living in a particular locality, but domicile means living in that locality with the intent to make it a fixed and permanent home. Residence simply requires bodily presence, as an inhabitant in a given place, while domicile requires bodily presence in that place and also one's intention to make it. one's domicile." Flatauer v. Loser, 141 N. Y. Supp., 953, 192 N. Y., 238.

It follows logically and necessarily that a man who had no residence elsewhere, but resides in Texas, being bodily present in this State, en-

gaged in business as Thompson was, can not be a "non-resident" of this State.    Egener v. Juch, 101 Cal., 105, 35 Pac., 432.

If it be admitted that Thompson was as frequently and continuously at other places as he was at Amarillo, it does not affect the conclusion; for whether he was a resident of Potter County or some other county in Texas he was not a non-resident of the State.    The fact that in the discharge of his duties he sometimes was out of the State can not affect this question.    From his own evidence there can be no doubt that he resided, i. e., was bodily present, within the State of Texas and was engaged in business in this State at the time he was injured and at the time he instituted this suit.

The evidence is definite and undisputed, therefore it was the duty of the court that tried this case to have transferred it on the plea of privilege to the county in which the injury occurred, which was Potter County; and on the evidence adduced the court should have charged the jury to so find under the undisputed evidence and the law.

It would not be good practice in this court to determine a question of law of this character, which leaves no fact to be found by the jury, and hesitate to apply it to the undisputed evidence, the plaintiff's own statements.    The most favorable conclusion for Thompson would be that he was a transient person, but that would not sustain his claim to choose the venue, because it is not within the proviso.    A transient person must sue in the county in which the injury occurred.

As the case was presented on the trial in the District Court the special charge should have been given, but under our conclusion as to the law the issue presented by that charge becomes immaterial.

It becomes the duty of this court to enter the judgment which the trial court should have entered; and it is therefore ordered that the judgments of the Court of Civil Appeals and of the District Court be, and the same are hereby reversed, and this cause is remanded to the District Court of Roberts County with directions that the same be transferred to the District Court of Potter County.

Mr. Justice HAWKINS, dissenting.

I concur in the conclusion that for want of a proper charge as to what constitutes residence under Revised Statutes, 1911, article 1830, subdivision 26, relating to venue, the judgment of the Court of Civil Appeals and that of the District Court must be reversed, and this cause remanded to the District Court for a new trial; but I can not concur in directing the District Court of Roberts County, in which this suit was filed, to peremptorily transfer it to the District Court of Potter County.

The verdict of the jury upon defendant's plea of privilege to be sued in Potter County, the county in which plaintiff's injuries occurred and in which defendants alleged plaintiff resided at the time he received said injuries, was adverse to defendants, and its effect was to sustain plaintiff's contention that at the date of said injuries he was a non-resident of this State.    Had said verdict upon said plea been rendered

under a proper charge as to what constitutes residence under said statute it would, I think, have been conclusive upon this court, inasmuch as it was sustained by the Court of Civil Appeals, and there is in the record evidence which, as I understand it, tends to support said verdict. For a condensed statement of facts see the opinion of the Court of Civil Appeals in 140 S. W., 1148.

There was evidence tending to show, and which, I think, would support a finding by the jury, that, at the date of his injuries plaintiff was not residing at Amarillo, within the meaning of said statute. Plaintiff testified, in substance, that he did not have a regular job in Amarillo, but was employed as a brakeman and was with a "chain gang," his duties being to run from Amarillo to Clovis, N. M., and return, and from Amarillo to Waynoka, Okla., and return; was called once to go to Roswell, N. M., but that order was canceled; by his directions had one letter come to him at Canadian, which we judicially know is the county seat of Hemphill County, Texas, and one at Clovis, N. M.; had some mail sent to him to general delivery at Amarillo; upon getting employment he had to give an address at which he could be found when needed, and gave as such address a room in the Santa Fe Hotel, in Amarillo, because he had no address and that could be his address the same as any other place; during the time he stayed at Amarillo he did not have a room there regularly; did not have a grip or trunk there; never called that his home; when he came to Amarillo he stopped there; sometimes stayed and slept in his caboose there; never did any washing in Amarillo prior to his injuries, but did his own washing at Waynoka and at Clovis; kept his clothes in his caboose and changed them to the other caboose whenever he changed cabooses; spent from seven to ten nights in Amarillo; slept one night there at the Union Hotel and several nights there in the caboose, and some nights at the Santa Fe Hotel there; would just go in and ask them if they had a bed, if they did, would pay for it; some nights would be in a room with others, some nights in bed with someone; would not occupy the same room at the Santa Fe Hotel, or other place in Amarillo that he occupied the night before; did not notify his employer of change of direction as to where he could be found, but did notify the call boy where to find him; during the month and twelve days between the date of his employment and the date of his injury, he spent about ten days in Waynoka, more time than he spent in Amarillo, because of the longer lay-over at Waynoka; his headquarters were never in Amarillo, and you could say that Canadian was as much his headquarters as was Amarillo; he received orders several times in Canadian; he did not think the principal part of his work was out of Amarillo; he worked as much out of Canadian as out of Amarillo; was eleven days between Canadian and Waynoka; during said month and twelve days he was laid off twice, once in Amarillo and once in Waynoka; on the latter occasion he had not gone to Waynoka on the "chain gang" from Amarillo, but had gone there from Canadian and was laid off there; on the day before he was injured he had been to Clovis, and had come from there to Amarillo on the day of his injury.

The evidence does not disclose what time had elapsed between the date of said injury and plaintiff's stay at Waynoka or at Canadian.

The majority opinion says: "The most favorable conclusion for Thompson would be that he was a transient person, but that would not sustain his claim to choose the venue, because it is not within the proviso. A transient person must sue in the county in which the injury occurred." My idea of this matter is that mere "bodily presence" in a county is insufficient to conclusively prove "residence" there; that "the most favorable conclusion for Thompson,".based on his own evidence, is that, although he had worked for several weeks for the plaintiffs in error he did not stay at any one place, meanwhile, long enough, or under circumstances, such as to justify this court in saying, as a matter of law, that he was "residing" there, and that, as to said period of his employment, and even as to the entire period of his actual existence in the State of Texas, his movements were so transitory—he was to such extent a transient person—as to open the way for the jury to find, upon his testimony as to his family, his home and his belongings in and his formed and expressed purpose to return there; that he "resided" in Alabama; that he was a non-resident of this State at the time of his injury. That is what I understand to be the effect of the verdict of the jury. I do not believe this court can properly say, as a matter of law, that there was no evidence to support said verdict. My understanding of said venue statute is that a man may have a legal domicile in another State and at the same time "reside," within the meaning of said statute, within this State; and, I think that phase of the case should have been presented, and should yet be presented, by the trial court to the jury.

I think that, under the circumstances of this case, the proper practice would now be, for the District Court of Roberts County to submit anew to a jury, under a proper charge, the issue raised by said plea of privilege.