**SIMONDS et al. v. STANOLIND OIL & GAS CO. et al.**

No. 5045.

Court of Civil Appeals of Texas. Texarkana.

March 25, 1937.

Rehearing Denied April 8, 1937.

Vernon Elledge, of Houston, and Ralph B. Shank and B. T. Fitzhugh, both of Tyler, for appellants.

Turner, Rodgers & Winn, Coke & Coke, and Prentice Wilson, all of Dallas, Conan Cantwell, of Jefferson, and Clay Tallman and L. A. Thompson, Jr., both of Tulsa, Okl., for appellees.

HALL, Justice.

Appellants, as heirs of Margaret Simonds, brought this suit in the district court of Gregg county against Stanolind Oil & Gas Company, Simms Oil Company, M. S. Church, Prentice Wilson, Percy McGeorge, C. & G. Oil Company, Mabel Shoemaker, and numerous other persons, to recover title and possession of a one-half undivided interest in a 110-acre tract of land, a part of the P. McAnally survey located in Gregg county, Tex. Appellants' action was in trespass to try title and for damages. They specially pleaded the 10-year statute of limitation (Vernon's Ann.Civ.St. art. 5510). The several appellees filed separate answers consisting of general demurrer, general denial, plea of not guilty, and specially alleged all the statutes of limitation. They also filed cross-actions against appellants to remove cloud from their title to the land in controversy. Several of the appellees, including Percy McGeorge, filed disclaimers. Appellants answered the pleadings of appellees, alleging among other things: "And pleading further herein, by way of replication to each and all of the several statutes of limitation pleaded by each and all of the defendants herein, plaintiffs respectfully show to the court that at the time of the accrual of the right out of which plaintiff's cause of action grew, and at the time of the accrual of plaintiffs' cause of action herein asserted against these defendants and each of them, that the defendant Percy McGeorge, through whom all of the remaining defendants claim title to the land in controversy, was a resident of the State of Texas at practically all times since the accrual of the right out of which plaintiffs' cause of action grew and since the time of the accrual of plaintiffs' said cause of action; that because of said absences from the State of Texas from and after said above dates and periods of time, defendants and each of them are not entitled to count or claim or compute, as part of the time limited by any Statute of Limitation, that period during which said defendant Percy McGeorge was absent from the State of Texas from and after the accrual of the right of plaintiffs' cause of action, and from and after the accrual of plaintiff's said cause of action, and plaintiffs further say that all of the statutes of limitation herein pleaded by defendants, and each of them, were totally suspended in their operation during the period of time that said defendant Percy McGeorge was absent from the State of Texas, and that by reason of the facts herein alleged the several pleas of limitation relied upon by the defendants, and each of them, are not valid."

Numerous persons were cited by publication who answered by an attorney ad litem with plea of not guilty and by limitation under the 10-year statute. Trial was to a jury. After all the testimony had been introduced both for appellants and for appellees, appellees made a motion for a peremptory instruction which was by the trial court granted, and judgment for appellees was entered accordingly.

Before the trial of this cause in the court below, Percy McGeorge conveyed the land in controversy to Mabel Shoemaker, trustee. Since the rendition of the judgment in the court below, appellants have settled and compromised with Mabel Shoemaker, trustee, M. S. Church, and Prentice Wilson, leaving only the leasehold interest in said tract of land in dispute.

Appellants claim through Margaret Simonds. Prior to 1903, Ellen Smith, the widow of Jack Smith, and her children en-

tered into an oral partition of the lands belonging to Ellen Smith and her deceased husband, Jack Smith. In this oral partition, the surviving widow received, as her portion of the estate of herself and her deceased husband, the land in controversy. On September 18, 1903, Ellen Smith and her children conveyed the land in controversy, which was the portion received by her in the oral partition, to Alf Sammons and Margaret Sammons, whom the record shows to be the same persons as Alf Simonds and Margaret Simonds. This deed was not filed for record until February, 1935, some three months after appellants had filed this suit in the court below, and some thirty-two years after its execution. It is the contention of appellants that they inherited through their ancestor Margaret Simonds a one-half undivided interest in the 110 acres in controversy. No transfer is shown out of Margaret Simonds to her one-half of this land. Margaret Simonds died in the year 1906. Appellees' chain of title comes through Alf Simonds, surviving husband of Margaret Simonds, who conveyed the entire 110 acres to W. M. Weathersby on January 3, 1916. This land was thereafter transferred to various parties, and on April 28, 1919, at which time the apparent legal title thereto was in Leo Custer was conveyed by Custer to Robert Davis. On March 11, 1922, Robert Davis conveyed the 110 acres together with a tract containing 53 acres adjoining the 110 acres on the north out of the same headright to Percy McGeorge. On January 25, 1931, Percy McGeorge executed and delivered an oil and gas lease covering this property to Cranfil & Germany, who on January 23, 1931, assigned same to the Simms Oil Company less 10 acres in the form of a square located in the northwest corner of said tract of land. On December 29, 1931, Simms Oil Company assigned a working interest in the leasehold in said land to Stanolind Oil & Gas Company. The 10 acres in the northwest corner of this tract of land referred to above is now held by the C & G Oil Company. The title to the 53-acre tract of land conveyed in the deed from Robert Davis to Percy McGeorge is not in dispute and was never owned or claimed by appellants. It appears from the record that on April 26, 1919, Robert Davis executed and delivered a deed of trust to the Oklahoma Farm Mortgage Company covering both the 53 acres and the 110 acres in controversy, and from this date to the institution of this lawsuit the two tracts of land, that is, the 53 acres and the 110 acres, have been conveyed by the same instruments. In addition to the deed from Robert Davis to Percy McGeorge conveying these two tracts of land, Percy McGeorge secured a deed from the Oklahoma Farm Mortgage Company which had theretofore purchased this land at a trustee's sale, and also a deed from Archie Blount covering the same two tracts of land. This placed in McGeorge all the apparent record title to the land in controversy.

■ At the outset we are met with a proposition advanced by appellants to the effect that the trial court erred in granting appellees' motion for peremptory instruction for the reason that appellants had discharged the burden resting on them by showing a prima facie record title into their ancestor Margaret Simonds with no transfer out of her. There is no evidence in the record that any of appellants have used or occupied the land in controversy at any time since 1916. Their claim to title rests entirely on the deed dated September 18, 1903, from Ellen Smith and children to Alf and Margaret Simonds. So, if the record discloses that appellees by their evidence have conclusively established their claim to this land under the five years statute of limitation, the trial court was correct in granting the request for peremptory instruction despite the fact that appellants at the close of their testimony had made out a prima facie case. The inquiry in the trial court was not who had had title to the land at some remote date, but who was the present owner thereof? To illustrate, if A sues B in trespass to try title and on trial of the case establishes title in himself either by unbroken chain of recorded instruments or under one of the statutes of limitation, and to rebut this proof B shows a general warranty deed from A or from A's ancestor through whom A claims, or a subsequently acquired title under one of the statutes of limitation, wherein the undisputed evidence shows him holding adversely to A, under this state of facts B would be entitled to a peremptory instruction for the very good reason that his evidence had wholly destroyed A's title. Therefore, the controlling question here, in our opinion, is one of limitation under the five-year statute (Vernon's Ann.Civ.St. art. 5509), during the period from and including the year 1923 to and including the year 1927. With respect to this phase of the case, appellants contend that the question of adverse possession, the residence of Percy McGeorge during the limitation period, and the payment of taxes

were controverted issues which should have been submitted to the jury for determination.

With respect to the residence of Percy McGeorge, the evidence is uncontradicted that he left Dallas on or about June 1, 1921, and during the entire period of limitation relied on by appellees visited Texas one time for a few days during the year 1926. When he left Texas in 1921, he returned to his old home and that of his family in or near Philadelphia, Pa. This fact was established by both McGeorge and his agent, G. K. Meriweather. From 1906 to 1921 McGeorge spent a considerable part of his time in Texas looking after the investments of the firm of Wm. McGeorge & Sons, but he testified positively that he never at any time intended to make Texas his home. The evidence shows without dispute that on the date the three deeds to the property in controversy were executed in favor of Percy McGeorge he was not bodily present in Texas, but was in Philadelphia, Pa. The only evidence introduced by appellants which would in the least contradict appellees' contention that McGeorge was a nonresident on the dates the property in controversy was conveyed to him were recitals in various conveyances to McGeorge wherein the granting clauses were made to "Percy McGeorge of Dallas, Texas," and the fact that Percy McGeorge maintained an office in the Praetorian Building in Dallas where his agent, Meriweather, carried on the business for Wm. McGeorge & Sons, and the further fact that Percy McGeorge maintained a furnished home on Douglas avenue in Dallas which he testified he occupied whenever he and his wife visited Texas. It is our conclusion that this evidence does not raise an issue as to the residence of Percy McGeorge after June, 1921, for the reason that the evidence as a whole conclusively shows that after said date McGeorge was a nonresident of Texas and a resident of the State of Pennsylvania, and R.S. art. 5537 would have no application. It seems to be the settled law of this state that the statutes of limitation with respect to realty will run in favor of a nonresident. In Wilson v. Daggett, 88 Tex. 1375, 31 S.W. 618, 619, 53 Am.St. Rep. 766, Chief Justice Gaines says: "The original construction placed upon section 22 of the old statute of limitations (now article 3216 of the Revised Statutes) is based in part upon the literal meaning of the word 'return,' and in part upon the supposed policy of the republic of Texas to induce immigration,—a result of the use of the term which was probably not contemplated by the congress which passed the act. We think, in the construction placed upon the section in the earlier decisions of the court, the word has already been given all the effect which can be justified by sound reason; and we are unwilling to push this etymological construction further. The effect of these decisions is to hold that as to actions of debt the provisions contained in article 3216 do not apply as to those who were nonresidents of the state both when the debt was created and when the cause of action accrued; and we are of the opinion that as applied to real actions the article should not apply to those who were not residents of the state when possession was taken, unless, perhaps, they took possession in person." In the same opinion the learned chief justice used this very significant language: "There are reasons why absence should not suspend the running of the statute in any suit for the recovery of land. To continue its operation, there must always be some one in possession, and such possessor may be sued at any time. The nonresident himself may be sued by publication, and his title determined. Arndt v. Griggs, 134 U.S. 316, 10 S.Ct. 557 [33 L.Ed. 918]." In Watts v. McCloud, 205 S.W. 381, 382, we find this expression: "So the courts have come to announce the proposition generally that the statute (R.S. art. 5537) does not apply to persons who were nonresidents of the state at the time of the accrual of the cause of action, and the statute was held to apply to real as well as personal actions." Chief Justice Brown of our Supreme Court in Pecos & N. T. Ry. Co. v. Thompson, 106 Tex. 456, 167 S.W. 801, 803, discusses the meaning of the word "residence" as used in the statute fixing the venue of suits for damages for personal injuries against a railway company and quotes with approval the following from the New York Court of Appeals: " ' "Residence" means living in a particular locality, but "domicile" means living in that locality with the intent to make it a fixed and permanent home. *Residence simply requires bodily presence as an inhabitant in a* given *place,* while domicile requires bodily presence in that place, and also an intention to make it one's domicile.' Flatauer v. Loser, 156 App.Div. 591, 141 N.Y. S. [951] 953; In re Newcomb's Estate, 192 N.Y. 238, 84 N.E. 950." (Italics ours.)

So we conclude that the evidence was undisputed with respect to the residence of Percy McGeorge on the date. the property here in controversy was conveyed to him and on the date of the accrual of appellants' cause of action against him and therefore it was not necessary for the trial court to submit an issue to the jury with regard to the residence of Percy McGeorge.

We shall next consider the payment of taxes during the five-year limitation period. Appellees introduced G. K. Meriweather, agent of Wm. McGeorge & Sons in Texas, who testified that he paid the taxes to the tax collector of Gregg county for Percy McGeorge during the five years beginning with and including the year 1923 through and including 1927 before delinquency. To corroborate Meriweather's testimony in this regard, appellees introduced in evidence the canceled checks, check stubs, and written reports made by Meriweather to·Wm. McGeorge & Sons at Philadelphia, showing the payment of taxes on this land before delinquency. The only evidence introduced by appellants to the contrary was a copy of the tax roll of Gregg county showing the land rendered and taxes paid by Robert Davis, for the years 1923, 1924, and 1925, the former owner of said land and grantor of McGeorge, and the further fact that Meriweather considered Robert Davis' connection with this land after he had conveyed it to McGeorge as that of a trespasser, so payment of the taxes by him for the three years would not inure to the benefit of McGeorge. In the case of Joske v. Irvine, 91 Tex. 574, 44 S.W. 1059, 1063, our Supreme Court states the rule with respect to instructed verdicts as follows: "From a careful examination of the cases, it appears (1) that it is the duty of the court to instruct a verdict, though there be slight testimony, if its probative force be so weak that it only raises a mere surmise or suspicion of the existence of the fact sought to be established, such testimony, in legal contemplation, falling short of being 'any evidence'; and (2) that it is the duty of the court to determine whether the testimony has more than that degree of probative force. If it so determines, the law presumes that the jury could not 'reasonably infer the existence of the alleged fact,' and 'that there is no room for ordinary minds to differ as to the conclusion to be drawn from it.' The broad and wise policy of the law, formed in and

descending to us through the crucibles of time, does not permit the citizen to be deprived of his property, his liberty, or his life upon mere surmise or suspicion, and places upon a trained judiciary the grave responsibility of determining as a question of law whether the testimony establishes more." In Lee v. International & G. N. Ry. Co., 89 Tex. 583, 36 S.W. 63, 65, the rule is thus stated: "To authorize the court to take the question from the jury the evidence must be of such character that there is no room for ordinary minds to differ as to the conclusion to be drawn from it." See, also, Gilbreath v. State (Tex.Civ.App.) 82 S.W. 807; Wills v. Central Ice & Cold Storage Co., 39 Tex.Civ.App. 483, 88 S.W. 265, writ refused. Based upon these decisions, can we say that reasonable minds would differ "as to the conclusions to be drawn from" the testimony respecting the party who actually paid the taxes on this land during the first three years covering the period of limitation? We think not. Surely the single item of testimony represented by a copy of the tax roll of Gregg county could be no more than the "slightest" testimony, and especially is this true when it is shown to be contradicted by the plain and positve testimony of the party who paid the taxes, corroborated by abundant written evidence made at the time of payment such as canceled checks, check stubs, and Meriweather's report to his principal; all of which are referable to the payment of taxes on this land and each checking with the other in the minutest detail. Moreover, there was· no reason for Robert Davis to render or pay the taxes on this land. He parted with the title to same in 1922 by general warranty deed to Percy McGeorge, and the only connection the record shows he had with the land after parting with the title was his slipping around the tenants of McGeorge, trying to collect from them the rents due McGeorge for the year 1932. We conclude, then, that respecting the payment of taxes on this land during the claimed period of limitation there was no issue to be determined by the jury.

We shall next consider the evidence with respect to the question of adverse possession of this land by appellees during the five-year period from 1923 to 1927, both inclusive. It is the contention of appellees that their adverse possession of the 53 acres would by construction extend to the 110 acres. As said in the beginning of this opinion, the 53 acres adjoined the 110 acres

on the north by a distance of some ninety varas. Both tracts were conveyed to Percy McGeorge by the same deed—in fact by three deeds conveying the same two tracts of land by identical field notes. There is no question but that McGeorge held the 53-acre tract adversely to all persons. It is undisputed that McGeorge considered the tracts as one farm and paid taxes on same as such. There is some dispute as to whether McGeorge through tenants actually used and cultivated any part of the 110 acres during the years 1923 and 1927. In discussing a situation similar to the one here involved, the Beaumont Court of Civil Appeals in Houston Oil Co. v. Rice Institute, 194 S.W. 413, 416, writ refused, states: "Appellant earnestly urges, under its third contention, that the tract claimed by appellee having been subdivided, the statute of limitation cannot be invoked by appellee to a subdivision of which it had never been in possession. While this proposition, with proper facts to support it may be sound, yet, under the facts in this case, they are not applicable. The two tracts into which the Porter survey had been divided were contiguous, and, after this survey had been divided into two tracts, both tracts thereafter were conveyed in the same deed to appellee, a description of both tracts gave a complete description to the whole Porter survey, and, as the record title to both of said tracts under the Howard patent was in appellant during the entire period of appellee's occupancy, the possession by appellee of one of said tracts under said deed extended to both of said tracts, constituting the land in controversy. Because the Porter survey had been divided into two tracts, and because in the conveyance to appellee the two tracts were conveyed by separate descriptions, would not prevent possession by appellee of one of the tracts, simply because it had its improvements on the other tract, for the reason that the description of both tracts described the entire survey, and the possession of one of the tracts under this deed would be possession of both tracts. We can see no difference in describing the whole by two descriptions, and describing the whole by describing its several parts into which it has been divided, which, taken together, describe the whole." In Boggess v. Allen, 56 S.W. 195, 196, affirmed by the Supreme Court in 94 Tex. 83, 58 S.W. 833, the Austin Court of Civil Appeals had under consideration a question of constructive possession. In that case a party was claiming 26 acres of land conveyed in one deed but in

two parcels; a 12-acre tract and a 14-acre tract. He had actual adverse possession of the 12-acre tract and was claiming the 14-acre tract by constructive possession. It developed on the trial of the case in district court that the limitation claimant's remote grantor never had or claimed title to the 14-acre tract. The district court gave judgment for the claimant to the 12-acre tract, the one actually possessed by him, but denied his plea to the 14-acre tract. In passing upon the question of constructive possession the court said: "It is well settled in this state that a party in actual possession of any part of an entire tract, as shown by his deed or other writing under which he claims, has constructive possession co-extensive with the boundaries designated in his deed. Rev.St. art. 3344; Cunningham v. Frandtzen, 26 Tex. [34] 38; Pearson v. Boyd, 62 Tex. [541] 544; Craig v. Cartwright, 65 Tex. 413. That the land in dispute is no part of the Huddlestone tract, lies outside of the boundaries of the Carraher tract, and is not shown to have been claimed by Mrs. Grimmel or her husband, are matters wholly immaterial. It is included in, and purports to be conveyed by, the deed from Mrs. Grimmel to Douglass; and therefore actual possession of any portion of the land conveyed by that instrument operates as constructive possession of the remainder." See, also, Parsons v. Dils, 172 Ky. 774, 189 S.W. 1158, Ann.Cas.1918E, 796. In Empire Gas & Fuel Co. v. Albright, 126 Tex. 485, 87 S.W.(2d) 1092, the pertinent facts were these: Judgment had been obtained in Harrison county against Mrs. Albright and to satisfy same a constable in Gregg county sold 400 acres of her land situated in that county to one Collins, describing said land by metes and bounds, leaving a triangular strip lying to the north containing 36 acres which still belonged to Mrs. Albright. Collins later sold the land to W. C. Hurst, the deed calling for 400 acres but describing not only the 400 acres but the triangular 36-acre strip on the north. Hurst, using the same field notes contained in a deed from Collins to him, conveyed the land to J. W. Akin. In a suit brought by Mrs. Albright to recover the entire tract, Akin and his vendors and vendees relied upon, among other defenses, the five-year statute of limitation. There was nothing in the record to indicate that Hurst's or Akin's actual occupany had been enlarged or changed so as to take in any part of the 36 acres after the field notes had been changed so as to include same. Judgment

in the trial court was for Akin and his vendees for the entire 436 acres based upon the five-year statute of limitation. This judgment was reversed by the Court of Civil Appeals [Albright v. Collins, 64 S.W.(2d) 1096, 1097] in so far as it affected the 36-acre strip on the north. The Supreme Court reversed the Court of Civil Appeals in this respect, holding:

"The jury in the trial court found that the defendants, and those through whom they hold, had peaceable and adverse possession of the land involved in the suit (which includes the so-called excess) either in person or through tenants, cultivating, using, or enjoying the same, and paying taxes thereon, and claiming under a deed or deeds duly registered, for a period of five years before June 15, 1931.

"The verdict in that respect has not been criticized or discussed by the Court of Civil Appeals. Application of the five-year statute did not depend alone upon the constable's deed containing the description construed by that court. Akin and Hurst, his predecessor in title, held consecutively under deeds duly registered describing the land with reference to and beginning at the Harris S. E. corner. These deeds describe the entire tract using the same description by virtue of which the Albrights acquired title, and the verdict, upon the issue of adverse possession, supported the judgment in favor of the defendants below for the entire tract, including the so-called excess at the north, whether or not the constable's deed correctly described it. The Court of Civil Appeals reversed the trial court's judgment as to such excess, solely upon the proposition that the constable's levy and sale did not include it. This we think was error.

"We may admit that Collins acquired no title to such excess under the constable's deed and that Hurst acquired no title thereto under the deed from Collins, but the latter deed is a sufficient support for the five-year statute of limitations, the other requirements of the statute being met."

■ McGeorge went into actual pedal possession of the land in controversy through tenants under three deeds conveying both tracts. His possession of the 53-acre tract began in 1923, and his possession of the 110-acre tract began in 1924. He purchased all the record title to these two tracts of land. It is undisputed that he held the 53-acre tract on the north for the required length of time and under circumstances which would mature in him title thereto under the five-year statute of limitation. In our opinion it makes no difference that the land might have been conveyed in two separate tracts in the same deed. Under the circumstances here they constitute one farm. It is shown by the undisputed evidence that McGeorge carried this land in his files as one farm and he paid the taxes on the entire 163 acres as one farm. Therefore we conclude that the adverse possession by McGeorge of the 53-acre tract would extend to and in law be constructive possession of the 110-acre tract.

Appellants earnestly contend in their able briefs that the case of Turner v. Moore, 81 Tex. 206, 16 S.W. 929, is conclusive against appellees' contention. With this contention we do not agree. There is a very material difference between this case and Turner v. Moore. In the case at bar the two tracts of land adjoin, and under appellants' theory of the case the appellees were unquestionably owners of an undivided one-half interest in the 110 acres, they holding title to the whole of said tract through their remote grantor, Alf Simonds, who was a tenant in common with appellants. Alf Simonds' deed to Weathersby, a stranger to the title, was an ouster of appellants as tenants in common, and under the authority of Welch v. Armstrong (Tex.Civ.App.) 62 S.W.(2d) 335, and Siler v. Jones (Tex.Civ. App.) 68 S.W.(2d) 279, affirmed by the Supreme Court in 100 S.W.(2d) 352, limitation would begin to run in behalf of the purchaser. In Turner v. Moore it is expressly stated by the able jurist who is the author of that opinion that the tract occupied was remote and disconnected from the two tracts sought to be held by constructive possession. The map in the opinion shows that there was an 800-acre subdivision between the occupied tract and the two tracts claimed, and, furthermore, Turner was claiming title to the whole league and labor of land comprising more than 4,400 acres under a quitclaim deed, and was seeking to hold this vast acreage by the actual occupancy of only 90 acres.

We conclude, therefore, that the trial court was correct in peremptorily instructing the jury in favor of appellees, under the five-year statute of limitations. This conclusion makes it unnecessary to discuss the other assignments brought forward.

The judgment is affirmed.