## PAGE v. KILGORE.

No. 2580.

Court of Civil Appeals of Texas. Waco.

April 20, 1944.

Rehearing Denied June 15, 1944.

White, Taylor & Chandler, of Austin, for appellant.

Fitzpatrick & Dunnam, of Waco, for appellee.

RICE, Chief Justice.

This is an appeal from an order overruling a plea of privilege.

Plaintiff asserted his right to maintain the suit in McLennan County because, he says: (1) the evidence disclosed that, as a matter of law, the defendant had established a residence, for venue purposes, in McLennan County; and (2) because his suit was based on a crime or offense committed in McLennan County. Subdivision 9, Article 1995, Revised Civil Statutes 1925.

The trial court filed extensive findings of fact and conclusions of law, wherein he found and concluded: (1) that defendant was a resident of Travis County, Texas; but that (2) plaintiff's suit was based on a crime or offense committed by defendant in McLennan County, and therefore venue lay in said county.

Defendant excepted and perfected his appeal because of the trial court's finding and conclusion last above mentioned and from the order, based thereon, overruling his plea of privilege. Plaintiff excepted to the finding and conclusion of the trial court that defendant at all times relevant to this. appeal, was a resident of Travis County, Texas, and was not a resident of McLennan County for venue purposes, and by cross-assignment presents the question of law thereby raised to this court for review. We will dispose of this question first.

Plaintiff's point is that the undisputed evidence disclosed that defendant was a resident of McLennan County, Texas, for venue purposes.

We overrule this contention. It would serve no useful purpose to here re-state the evidence relevant to this question. It was, we think, sufficient to have supported a finding either for or against plaintiff on the issue of fact raised by the pleadings. Gilmer v. Graham, Tex.Com.App., 52 S.W.2d 263. Therefore, this court is not author-

ized to disturb the trial court's judgment. Pecos & N. T. R. Co. v. Thompson, 106 Tex. 456, 167 S.W. 801.

Defendant takes the position that the trial court erred in overruling his plea of privilege on the ground that defendant had committed a crime in McLennan County, because, he says, plaintiff's suit was not based upon a crime, but was based upon a contract, and therefore the provisions of subdivision 9 of Article 1995 have no application.

Plaintiff alleged in his original petition that he entered the employ of defendant in the capacity of warehouse supervisor under the terms of a contract entered into between plaintiff and defendant, whereby the latter obligated himself to pay plaintiff the sum of $6.66 per day for eight hours work six days per week; that pursuant to this agreement plaintiff worked for defendant from June 20, 1942, to March 12, 1943; that during said period of time plaintiff was required to work twelve hours per day seven days per week and was only paid for eight hours per day six days per week; that by reason of said facts he had worked 1,428 hours overtime, for which he had not been paid; and that by reason of the law in such cases he was entitled to recover time and one-half in the sum of $1,783.21.

Service was had upon defendant, under the foregoing pleading, and he thereupon seasonably filed his plea of privilege to be sued in Travis County, where he resided.

Thereupon plaintiff filed his first amended original petition, wherein he again pleaded as hereinabove set forth, and, in addition, pleaded that in the event he was mistaken in his allegation that he had an express contract with defendant, then the law governing the particular work that plaintiff was engaged to do for defendant provides that he shall be so paid, and therefore he had an implied contract with defendant to be paid upon such basis.

On the same day that he filed his first amended original petition, plaintiff filed his controverting affidavit, and therein referred to and made a part thereof, his pleading last above mentioned, and predicated his claim to maintain this suit in McLennan County on two grounds: (1) that defendant had a legal residence for venue purposes in said county; (2) that his suit was a suit for wages for labor done and performed by plaintiff for defendant at his special instance and request in McLennan County, and in this connection plaintiff pleaded "each and every section of Article 1995, of the Revised Civil Statutes of the State of Texas, together with all amendments thereto, and also Article 2390, and each and every section thereof."

Thereafter plaintiff filed his first trial amendment, wherein he alleged that he performed the work and labor in question for defendant as contemplated by contracts made and entered into by defendant with the United States Government, and in contemplation of and pursuant to Section 324 and 325 of Title 40, United States Code Annotated, and also Section 303 of Public Act Number 781, 76th Congress, Approved September 9, 1940 [40 U.S.C.A. § 325a], relating to compensation for overtime. He further alleged that in the performance of his duties for defendant he performed manual labor of a toilsome nature, and that the law in such cases, and the contract entered into by defendant with the United States Government provided that plaintiff would not be required to work more than eight hours per day in any one calendar day on such work unless he should be paid for all work in excess of eight hours per day at not less than one and one-half times the basic rate of pay. This pleading was sworn to, but does not make reference to the controverting affidavit.

Thereafter, plaintiff filed his "second trial amendment to his controverting affidavit heretofore filed herein", wherein he alleges that the court has venue of this cause for the reason that the same was based upon a crime, offense and trespass committed by defendant in McLennan County, Texas, as set out in his first amended original petition, his first trial amendment, and his original petition, in that "the same constitutes a violation on the part of defendant, Holland Page, of the Penal Provisions of Sections 321, 322, 323, 324, 325 and 325a of Title 40 of United States Code Annotated, and the Amendments thereto, relating to public buildings, * * * works * * * here referred to and made a part hereof, for all purposes." This pleading was duly verified.

Plaintiff testified that his contract of employment with the defendant was that he was employed at a weekly salary of $35 and was to work twelve hours a day seven days a week; that his weekly salary was later raised to $40; that he started in from the first working twelve hours per day, and continued so to do for each day of the

week throughout the period of his employment; that he worked on a weekly basis. He further testified that it was his duty to look after and keep the records of the parts department in the warehouse where supplies for trucks and cars were kept; that in the course of his employment he performed very hard labor, handling truck springs, rear ends for trucks and other parts for trucks; that he did everything there was to do. He further testified that the time-keepers did not keep his time; that others had to sign a time card every night, but he did not; that he quit because he was injured in a car accident.

Defendant's payroll showed that plaintiff was listed as a clerk with a weekly salary, and that he worked a total of 56 hours a week. It was undisputed that plaintiff worked twelve hours each day, seven days a week, or a total of 84 hours a week.

The services rendered by plaintiff to defendant were in connection with the latter's contract with the Government of the United States for the construction of an auxiliary flying field. Article 2 of the contract, captioned "Eight Hour Law, Overtime Compensation and Convict Labor," provides substantially as follows: No laborer or mechanic should be required or permitted to work more than eight hours per day unless compensated for all hours in excess of eight hours at not less than one and one-half times the basic rate. It further provided that a penalty of $5 per day should be imposed on the contractor for each laborer or mechanic permitted or required to labor more than eight hours a day without receiving compensation as above provided for, and that such penalties were to be withheld for the use and benefit of the Government, provided that the foregoing stipulation should be subject in all respects to the exceptions and provisions of the U.S.C.A., Title 40, Sections 321, 324, 325 and 326, as modified by Section 303 of Public Act No. 781, Approved September 9, 1940, 40 U.S.C.A. § 325a, relating to compensation for overtime.

Title 40 U.S.C.A., § 321, made it unlawful for any contractor or sub-contractor to require or permit a laborer or mechanic to work upon a public work of the United States more than eight hours in any calendar day except in case of extraordinary emergency.

Section 322, Title 40, provides that any contractor or sub-contractor who intentionally violates any provision of Section 321 shall be deemed guilty of a misdemeanor, and shall be punished, on conviction, by imprisonment of not more than six months or by fine not to exceed $1,000, or by both such fine and imprisonment.

Section 324, Title 40, provides that every contract for or on behalf of the United States which may require the employment of laborers or mechanics shall contain a provision that no laborer or mechanic shall be required or permitted to work more than eight hours per day, and that the contract shall stipulate a penalty of $5 per day for each day that a laborer or mechanic shall be required or permitted to work more than eight hours per day, such penalties to be withheld for the use and benefit of the United States.

Subdivision (b) of Section 1155 of Title 50 U.S.C.A.Appendix, Act of June 28, 1940, reads as follows: "During the national emergency declared by the President on September 8, 1939, to exist, the provisions of the law prohibiting more than eight hours' labor in any one day of persons engaged upon work covered by Army, Navy, and Coast Guard contracts shall be suspended." Section 1162 provides that the Act shall terminate June 30, 1942, unless Congress shall otherwise provide. Section 325a, Title 40, passed September 9, 1940, provides:

"Notwithstanding any other provision of law, the wages of every laborer and mechanic employed by any contractor or subcontractor engaged in the performance of any contract of the character specified in sections 324 and 325 of this title, shall be computed on a basic day rate of eight hours per day and work in excess of eight hours per day shall be permitted upon compensation for all hours worked in excess of eight hours per day at not less than one and one-half times the basic rate of pay. Sept. 9, 1940, 9 a. m. E. S. T., c. 717, Title III, § 303, 54 Stat. 884."

Defendant takes the position that in view of the provisions of subdivision (b) of Section 1155 and of Section 325a, set out above, it is not a crime to permit a laborer or mechanic to work more than eight hours per day; that Congress has passed no law making it a crime to fail to pay a laborer overtime for work done by him in excess of eight hours a day; and hence plaintiff's case is lacking in its essential venue fact, to-wit: a showing that there was in force a statute making the acts of defendant a crime.

With this view we are inclined to agree. However, should we be incorrect in this, we are of the opinion that plaintiff failed to establish venue in McLennan County because plaintiff's case sounds in contract, and is not based upon a crime or offense. Assuming that, under the foregoing statutes, defendant's acts were in violation of the law in that plaintiff was either a mechanic or a laborer, and defendant required or permitted him to work in excess of eight hours a day without paying him overtime, none of these statutes, by their terms, vest in plaintiff any cause of action against defendant for the recovery of a penalty. His suit is not bottomed upon the express contract pleaded by him, nor upon the contract he testified was entered into between defendant and himself at the time he was employed, because he admitted that defendant paid him the weekly remuneration agreed upon. This suit is bottomed upon the contract entered into by defendant with the United States, whereby the defendant bound himself to pay all laborers and mechanics overtime for all hours they worked in excess of eight hours a day. It is plaintiff's contention, as demonstrated by his pleadings and his testimony, that the work he was required to perform, and which he did perform, made him a laborer within the meaning of the provisions of that contract, and therefore, because of its terms, he is entitled to be paid overtime for each hour he worked in excess of eight hours per day.

When the venue depends upon the nature of the suit, such venue is ordinarily determined by the nature of the principal right asserted and the relief sought for the breach thereof. Lone Star Mutual Life Ass'n v. Bruno, Tex.Civ.App., 101 S.W.2d 1059; O'Quinn v. O'Quinn, Tex.Civ.App., 57 S.W.2d 397; Nunnally v. Holt, Tex.Civ. App., 1 S.W.2d 933; Bateman v. McGee, Tex.Civ.App., 50 S.W.2d 374; Lipscomb v. Rankin, Tex.Civ.App., 139 S.W.2d 367.

The character of this suit, controlling the question of venue, is determined as a matter of law by the facts alleged in the petition. Federal Land Bank of Houston v. Downs, Tex.Civ.App., 127 S.W.2d 952; Lee Mercantile Co. v. Thompson, Tex.Civ.App., 161 S.W.2d 581. When we construe the allegations of plaintiff's pleadings, with the aid of plaintiff's testimony adduced in support thereof, we cannot escape the conviction that the primary and dominant purpose of plaintiff's suit is to establish that the character of the services rendered by him to defendant constituted him a laborer within the true intent and meaning of that term as used in defendant's contract with the United States, and that for this reason he is entitled, by the applicable provisions of said contract, to recover of defendant the difference between the amount he was actually paid and the amount he should have been paid as a laborer under the contract. Because thereof, we are of the opinion that plaintiff's suit is based upon the aforesaid contract between defendant and the United States, and that it is not based upon a crime or offense. "To make applicable the 'crime' clause of exception 9 of the venue statute, the suit alleged in plaintiff's petition must be one in which the basis of liability of defendant to plaintiff is some act or omission for which defendant is liable to punishment under the penal code." Thomas v. Meyer, Tex.Civ.App., 168 S.W.2d 681, 682; Hurley v. Reynolds, Tex.Civ.App., 157 S. W.2d 1018.

The judgment of the District Court is accordingly reversed and judgment is here rendered that the plea of privilege be and the same is hereby sustained, and it is ordered that the cause of action be transferred to the District Court of Travis County, as provided by Rule 89, Vernon's Texas Rules of Civil Procedure.

On Motion for Rehearing.

In an able motion for rehearing appellee contends that since all of the evidence upon the issue of appellant's residence came from appellant, his testimony was a judicial admission and established as a matter of law that at the time of the institution of the suit, at the time of service of process, and at the time of the filing of his plea of privilege, appellant was a resident of McLennan county, Texas, for venue purposes, and that this court erred in not so holding.

Appellee is correct in his statement that all of the testimony as to appellant's residence came from appellant. The facts developed by his testimony are substantially set forth in the trial court's findings of fact as follows:

"As to the residence of the defendant the following testimony was introduced: The defendant, Mr. Page, testified that he was a contractor, doing general construction work and that some time prior to June 20,

1942, he and others entered into a contract to construct what is now known as the Blackland Army Flying School and later he entered into contracts with the Government to construct two auxiliary landing fields in McLennan County, Texas; that all of said construction work was rendered and performed in McLennan County, Texas, and that he has at this time thousands of dollars worth of machinery and equipment in this county and has at times engaged as high as three thousand employees; that he has maintained an office and telephone on each job in this county since he first began work on said fields; and his name also appeared in the Classified Ads of the Waco telephone directory, showing that he was a general contractor at Waco, Texas.

"The defendant also testified that he had, at all times since prior to June 20, 1942, a post office box at Waco, Texas, and at the time of the hearing he had two boxes where he received all of his mail concerning his business for this district.

"He also testified that in the McLennan County contracts with the Government that he entered into, he gave his address as Waco, Texas, and that he had envelopes showing his return address: 'Holland Page, General Contractor, P.O. Box 1790, Waco, Texas', because 'whenever we get a job we have a project number like this job here and we are requested to have all our particular mail we have with reference to that particular job mailed to that particular box we have there. In some districts we have three or four mail boxes.'

"That he maintained in the First National Bank of Waco, Texas, what he called a 'Revival Account', which was used only to buy stamps, pay freight and to pay employees that were fired or discharged, and for the purpose of loaning employees small sums so that such amounts could be paid immediately, but that the pay rolls on each job were made on the job and sent to the Austin office where the social security and other taxes were taken off and the checks issued from said office and mailed back to the job to be paid out on the job.

"He further testified that shortly after coming to Waco he engaged a room at the Roosevelt Hotel where he slept and lived while in Waco and that he kept said hotel room until about the time the Blackland job was half completed; that he then went to Marfa, Texas, where he stayed from two to three months and then he went to Brownwood and stayed two or three months and then came back to Waco about April 20th and has had a room at the hotel since that date, and has at times had two rooms at said hotel; that he maintains a room in different towns for different employees, such as engineers and others that were sent out of Austin on special business; that he maintained these rooms so that he would be certain that he or his employees would have a room when visiting the jobs at different places; that he had two rooms in Marfa, two in Olney and used two rooms here; that he also maintained telephones and post office boxes on each job, which were located at Bastrop, Temple, Brownwood, Olney, Marfa, Mountain Home, Ark. and two at the home office at Austin, Texas, besides the three telephones in Waco.

"Mr. Page further testified that he was married and had been for thirty years and had continued to live with his wife continuously since said time; that they have since 1928 or '29, maintained their residence on Norwood Road, Austin, Travis County, Texas, and that he has never resided in any other place; that his wife lived at Austin, Texas and that he, during the time he was in Waco and maintained his room at the Roosevelt Hotel, went to Austin two or three times a week and that his wife, while visiting her son near Waco, did not spend one night in said Roosevelt Hotel or in McLennan County; that his residence is listed in the Austin telephone directory; that while he maintained his room at the Roosevelt Hotel, he would leave and be gone as high as three weeks at a time; that he was in Arkansas in January for three weeks; that he traveled about 70,000 miles during the last year; that he and his wife both pay their poll tax and vote in Travis County, Texas; that they own no home or property in McLennan Co., Texas, but they own their home and residence in Travis County, Texas; that he was here in McLennan County only for the purpose of looking after his contracts and that is the only thing that brought him here; that he did not come to Waco to stay here any length of time before he had the contract in McLennan County and that he did not expect to remain in McLennan County after these contracts are finished."

Based upon the authorities cited in our original opinion and those hereinafter cit-

ed, we hold that the testimony of appellant does not establish as a matter of law that at the times relevant to this appeal he had a residence for venue purposes in McLennan County, Texas. Joy v. Marshall Field & Co., Tex.Civ.App., 51 S.W.2d 731; Bolton v. Alley, Tex.Civ.App., 25 S.W.2d 638; Houston Printing Co. v. Tennant, 120 Tex. 539, 39 S.W.2d 1089; Hausman Bros. Packing Co. v. Allen, Tex.Civ.App., 59 S.W.2d 246; Dixon v. McDonald, Tex.Civ. App., 130 S.W.2d 884; Caprito v. Weaver, Tex.Civ.App., 63 S.W.2d 1043; Agey v. Red Star Supply Co., Tex.Civ.App., 113 S. W.2d 212; Brown v. Boulden, 18 Tex. 431, 432.

Appellee's motion for rehearing is accordingly overruled.